Jarod Bona (23327)
jarod.bona@bonalawpc.com
Bona Law PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589
858.964.2301 (fax)

*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AmeriCare MedServices, Inc., | Case No.: |
| *Plaintiff,* | **Complaint** |
| vs. | |
| City of Orange, | JURY TRIAL DEMANDED |
| *Defendant.* | |

Plaintiff AmeriCare MedServices, Inc. ("AmeriCare") alleges as follows upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters.

## NATURE OF THE ACTION

The State of California created a scheme by which it and its political subdivisions ensure that California citizens receive the prehospital emergency medical services and transport ("EMS") to which they are entitled. Under that scheme, the state gave its local EMS authorities—subject to supervision and approval by the California Emergency Medical Services Authority ("EMSA")—authority to determine which areas within its jurisdiction should be "exclusive operating areas" subject to a competitive bidding process or grandfathering, and which areas should be non-exclusive operating areas in which multiple qualified providers operate to provide the swiftest emergency response. With the exception of grandfathered areas where the same service provider has been providing service without interruption since January 1, 1981, competition is the state policy.

Defendant City of Orange eschewed the State of California's competition policy—and the determinations made by its state and local EMS authorities—and instead monopolized the market. Although the city did not "contract[] for or provide[]" prehospital EMS as of June 1, 1980, it asserts that it retains control of those services. The city had an informal understanding, and no written contract, with a private ambulance company until 1995. In 1995, the city displaced the private ambulance service with its own fire department,

1

COMPLAINT

repudiating the competitive bidding process once and for all, in direct violation of state law. In doing so, it created an illegal monopoly in violation of Sherman Act Section 2.

Due to the absence of a competitive bidding process or any grandfathering, the Orange County Emergency Medical Services Authority ("OCEMS") redesignated AO16 as a non-exclusive area in which any county-qualified EMS provider is entitled to be placed in rotation upon request.

The city—recalcitrant to ceding control over a lucrative revenue-generating service the State of California has determined should instead be provided in a competitive market—refuses to place Plaintiff AmeriCare into the rotation for AO16. The city falsely claims that it maintains its "rights" under California Health & Safety Code Section 1797.201. But the city never had those rights because it was not contracting for or providing its own prehospital EMS services as of June 1, 1981. *See* Cal. Health & Safety Code § 1797.201. Moreover, regardless of whether the city retained .201 rights, it may only operate as an exclusive operating area if either (a) "a competitive process is utilized to select the provider or providers" or (b) OCEMS "develops or implements a local plan that continues the use of existing providers operating within [the] area in the manner and scope in which the services have been provided without interruption since January 1, 1981." Cal. Health & Safety Code § 1797.224. As the designating authority, OCEMS determined that the City of Orange does not meet either exception for exclusivity.

COMPLAINT

BONA LAW PC
BUSINESSJUSTICE.COM

The city has not utilized a competitive process and has not carried on with an existing service provider without interruption since before January 1, 1981. In fact, the city did not enter into the ambulance business until 1995.

The City of Orange established an illegal monopoly with 100% market power and an ability to raise prices above market levels—indeed, to any price it so deems—in AO16, while providing minimal quality and speed of service without regard to market demand. In direct contravention of State of California policy, the city displaced all competition in the market for prehospital EMS in the area comprising Orange. As a result, consumers of prehospital EMS in the relevant market pay supracompetitive prices and suffer slower response times and lesser quality emergency services than those provided in a competitive market.

This is an action for damages, declaratory, and injunctive relief for monopolization under Section 2 of the Sherman Act and certain state law claims.

## JURISDICTION AND VENUE

1.      This Court has primary subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1337(a), and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26 because this action arises under the antitrust laws of the United States.

2.      This Court has supplemental jurisdiction over the state law claims of this complaint under 28 U.S.C. § 1367 because they arise from the same nucleus of operative facts as the antitrust claim such that they form part of the same case or controversy.

3

COMPLAINT

3.      Venue is proper in the Central District of California under 28 U.S.C. § 1391(b) and 15 U.S.C. §§ 15, 22 because Defendant transacts business in this district and because a substantial part of the events giving rise to this complaint occurred in this district. More specifically, Defendant monopolized a geographic market within this district.

4.      Defendant is subject to personal jurisdiction in California because it is a California general law city with a California address that conducts business in California.

## PARTIES

5.      Plaintiff AmeriCare MedServices, Inc. is a family-owned, Orange County-based California corporation qualified and licensed to provide emergency ambulance service throughout Orange County. AmeriCare has been serving Orange County since its formation in 1996.

6.      Defendant City of Orange is a California general law city with its principal place of business at 300 E. Chapman Avenue, Orange, California 92866.

7.      The city and its employees and agents participated personally in the unlawful conduct challenged in this complaint and, to the extent they did not personally participate, they authorized, acquiesced, set in motion, or otherwise failed to take necessary steps to prevent the acts complained of in this complaint.

COMPLAINT

## SUBSTANTIVE ALLEGATIONS

### The Statutory Scheme

8.    Prior to 1980, the law governing prehospital EMS in California was haphazard; cities, counties, and public districts were not required to, and had little guidance or means to, coordinate or integrate their operations.

9.    In 1980, the California legislature imposed a new scheme for the provision of prehospital EMS designed to create a new coordinated system for the provision of prehospital EMS with its passage of the Emergency Medical Services System and the Pre-Hospital Emergency Medical Care Personnel Act.

10.    The act created a new manner of local administration of prehospital EMS, providing two tiers of governance: (1) the EMSA, and (2) the local EMS agency, in this case the Orange County Emergency Medical Services ("OCEMS") section of the Orange County Department of Health.

11.    Among the EMSA's duties are the power to review and approve the prehospital EMS plans submitted by local EMS agencies to determine whether the plans "effectively meet the needs of the persons served" and are consistent with the law and Authority guidelines and regulation.

12.    The local EMS agency, on the other hand, has the power and responsibility to provide prehospital EMS throughout its area of responsibility. It develops and submits for approval its plan for prehospital EMS in the area of its responsibility.

COMPLAINT

13.     The legislative scheme allows a local EMS agency to designate one of two modes for the provision of EMS services in any particular geographic area within its purview: (1) exclusive operating areas and (2) non-exclusive operating areas.

14.     In effect, an exclusive operating area allows the local EMS to create monopolies in the provision of prehospital EMS *provided* that the local EMS uses a competitive process for awarding those monopolies. Cal. Health & Safety Code § 1797.224. The local EMS can also designate an exclusive operating area through "grandfathering" an area in which a particular provider or providers have been operating without interruption since January 1, 1981. *Id.*

15.     In non-exclusive operating areas, prehospital EMS providers compete in an open market. In Orange County, these private ambulance services are subject to a rigorous licensing and qualification process and must provide services according to rates predetermined by OCEMS. AmeriCare is fully licensed and qualified by OCEMS.

16.     Under the scheme, the local EMS must define and describe each operating area within its jurisdiction in its local EMS plan submitted to EMSA. It must designate each area as exclusive or non-exclusive.

17.     Mindful that the new prehospital EMS scheme relies on a competitive marketplace that would supplant existing services in some municipalities, the legislature made one narrow exception to the system of local EMS agency control: a municipality that had contracted or provided for its own prehospital EMS as of June 1, 1980

could choose whether to continue administering its own prehospital EMS or to enter into an agreement with the local EMS agency. *See* Cal. Health & Safety Code § 1797.201. Cities that chose to retain their power to administer prehospital EMS colloquially call this power ".201 rights".

18.    But this control does not allow cities to create monopolies by their own fiat. Section 1797.224 allows *only* local EMS agencies such as OCEMS, acting through an EMSA-approved plan, to create exclusive operating areas:

> A local EMS agency may create one or more exclusive operating areas in the development of a local plan, if a competitive process is utilized to select the provider or providers of the services pursuant to the plan. No competitive process is required if the local EMS agency develops or implements a local plan that continues the use of existing providers operating within a local EMS area in the manner and scope in which the services have been provided without interruption since January 1, 1981.

Cal. Health & Safety Code § 1797.224 (West).

19.    The California Supreme Court has explained that while
> a local EMS agency's ability to create [exclusive operating areas] may not supplant the [cities'] ability to continue to control EMS operations over which they have historically exercised control[, n]othing in this reference to section 1797.201 suggests that cities . . . are

to be allowed to expand their services, or to create their own exclusive operating areas.

*Cty. of San Bernardino v. City of San Bernardino*, 15 Cal. 4th 909, 932 (1997).

20.    Therefore, even where a city retains .201 rights, operating areas can only be designated as exclusive by the local EMS if the city can establish either (1) grandfathering, or (2) that it utilized a competitive process to select its current provider in the last ten years.

21.    Otherwise, the operating area must be designated as a non-exclusive operating area in which restraints of trade imposed by a local government entity are not immune from antitrust liability under the state action doctrine.

## Prehospital EMS in the City of Orange

22.    In 1972, the City of Orange had a *de facto*, unwritten agreement with Morgan Ambulance Service, Inc. (and its successor, Medix Ambulance Service) to provide emergency ambulance service within Orange city limits.

23.    The city requested and entered into a series of contracts with Orange County concerning the administration of prehospital EMS in the City of Orange in 1979, 1981, and 1986. *See* Ex. A.

24.    Under the agreement, the city gave its authority to administer prehospital EMS, including the authority to license and regulate. In turn, the city was required to adopt the Orange County model ambulance ordinance, which provides for competitive bidding,

8

standards for licensure, and maximum rates for private providers, among other things.

25.     Although the city chose to repudiate its power to administer prehospital EMS, Orange County allowed the city to utilize its own competitive request for proposal (RFP) process if it so chose. This allowed the city to retain minimal controls over service levels and operations established through the RFP process.

26.     The city did not conduct an RFP as required by the ordinance. Morgan Ambulance Service (later Medix) continued to operate exclusively within the city until 1995.

27.     But in the midst of a recession and the effects of Proposition 13, the city followed suit with many other cities in California: rather than balance its budget, it increased the variety of services performed by its fire department, expanding into lucrative new revenue-generating domains.

28.     In 1995, the City of Orange ceased using its existing provider and entered, for the first time, into the ambulance business itself. Its legally and factually untenable position appears to have been that (a) it had .201 rights, and (b) as a result of those .201 rights, it could establish a new monopoly of its own.

29.     Since establishing its monopoly, the city has raised its rates arbitrarily and without regard to cost.

30.     Immediately after establishing its monopoly, the city cut back on service levels previously provided within AO16—from four ambulances to three.

31.     OCEMS may only designate and maintain exclusive zones in its local EMS plan—and EMSA will only approve such a designation—if a city can establish one of two criteria: (1) a competitive bidding process was used in the last ten years to contract with the highest ranked bidder, or (2) grandfathering. Under this criteria, OCEMS has determined that only the cities of Brea, Santa Ana, and Westminster could be labeled as city-administered zones enjoying exclusivity under the plan, whether due to competitive bidding or grandfathering.

32.     In 2002, OCEMS re-evaluated its EMS plan. OCEMS determined that AO16 failed to meet either criterion for the exclusive operating area designation under California Health and Safety Code Section 1797.224. OCEMS submitted its amended plan designating AO16 as a non-exclusive operating area to EMSA, which EMSA approved.

33.     The city never placed any private ambulance company in the rotation for service calls, illegally maintaining its monopoly in a non-exclusive zone.

### City of Orange Excludes AmeriCare

34.     AmeriCare submitted a written request to OCEMS February 25, 2015 to be placed on rotation within AO16, the non-exclusive operating area comprising Orange. OCEMS replied March 18, 2015 directing AmeriCare to contact the city manager for the incorporated city within the zone.

35.     Although OCEMS has the responsibility and authority to administer non-exclusive zones not retained by cities validly

10

exercising .201 rights, OCEMS has entered into agreements in which it allows certain cities to administer, in part, the provision of prehospital EMS within its jurisdiction. OCEMS calls these areas "city administered" and the Orange County attorney has expressly disclaimed that "city administered" is not a determination regarding .201 rights. Instead, "OCEMS does not currently believe the determination of which cities can legitimately claim .201 rights is one to be made by [it]." *See* Ex. B at 62. OCEMS nevertheless continues to assert its sole authority to determine exclusivity because ".201 rights and exclusivity are two different things." *Id*. at 63.

36.     AmeriCare submitted its written request to John Sibley, city manager of City of Orange March 19, 2015, explaining its correspondence with OCEMS and requesting that either the city arrange for AmeriCare to be placed into the prehospital EMS rotation or state a position that it does not have responsibility for the administration of prehospital EMS. Ex. C.

37.     The city sent a scathing response in which it asserted, contrary to well-established law, that it has the authority to designate its own exclusive area and to do so without any competitive process. Moreover, it stated that a city retaining .201 rights "is not required to open up its jurisdiction, on a rotation or any other basis, to additional providers." Ex. D at 75.

38.     But for the city's monopolization of the market, AmeriCare and other private ambulance providers would have been placed in rotation and patients would have paid lower prices for faster and better service. During periods of higher volume, more ambulances

COMPLAINT

would have been available from other providers and patients would have been stabilized and transported for hospital care more quickly.

39.     AmeriCare lost business as a result of the city's actions.

### Claims Limitation Not Applicable

40.     AmeriCare has complied with all applicable presentation of claims to local governments' requirements under California law. The City of Orange denied AmeriCare's claim March 10, 2016, and therefore the state law claims for damages are timely filed.

### COUNT I

### Monopolization, 15 U.S.C. § 2

41.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates by reference each preceding paragraph as though fully set forth at length herein.

42.     Section 2 of the Sherman Act, 15 U.S.C. § 2 provides:

> Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony . . . .

43.     Defendant City of Orange possesses monopoly power in the market for the provision of prehospital EMS in the Orange area.

44.     Through the conduct described herein, the city has willfully maintained that monopoly power by anticompetitive and exclusionary conduct. It has acted with the intent to maintain its

COMPLAINT

monopoly power, and its illegal conduct has enabled it to do so, in violation of Section 2 of the Sherman Act.

45.     The market has been harmed as a result of the city's conduct as consumers of prehospital EMS have been forced to pay supracompetitive prices while receiving lower quality, slower service.

46.     AmeriCare provides superior prehospital EMS at lower prices and provides higher quality and faster service.

47.     AmeriCare has been harmed by the city's willful maintenance of its monopoly and its exclusion of all competitors.

48.     The City of Orange has acted in direct contravention of the policy of the State of California with regard to displacement of competition for prehospital EMS, and therefore is not entitled to immunity under the state action doctrine.

49.     Moreover, the city is not entitled to immunity under the state action doctrine because it is a market participant.

50.     The Local Government Antitrust Immunities Act, 15 U.S.C. § 36, does not apply because the city was not acting in its capacity to govern—merely regulating or interacting with private actors—but rather as a market participant.

**COUNT II**

**Attempted Monopolization, 15 U.S.C. § 2**

51.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates by reference each preceding paragraph as though fully set forth at length herein.

52.     Defendant City of Orange has willfully engaged in a course of conduct, including anticompetitive and exclusionary actions,

COMPLAINT

with the specific intent of monopolizing the market for prehospital EMS in the area of Orange, and there is a dangerous probability that, unless restrained, anticompetitive conditions will occur, in violation of Section 2 of the Sherman Act.

53.     The market has been harmed as a result of the city's conduct as consumers of prehospital EMS have been forced to pay supracompetitive prices while receiving lower quality, slower service.

54.     AmeriCare provides superior prehospital EMS at lower prices and provides higher quality and faster service.

55.     AmeriCare has been harmed by the city's willful maintenance of its monopoly and its exclusion of all competitors.

56.     The City of Orange has acted in direct contravention of the policy of the State of California with regard to displacement of competition for prehospital EMS.

57.     Moreover, the city is not entitled to immunity under the state action doctrine because it is a market participant.

58.     The Local Government Antitrust Immunities Act, 15 U.S.C. § 36, does not apply because the city was not acting in its capacity to govern—merely regulating or interacting with private actors—but rather as a market participant.

## COUNT III
### Unfair Competition, Cal. Bus. & Prof. Code § 17200

59.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates by reference each preceding paragraph as though fully set forth at length herein.

14

BONA LAW PC
BUSINESSJUSTICE.COM

60.     Defendant City of Orange's conduct constitutes unfair, unlawful, and/or fraudulent business practices within the meaning of California Business & Professions Code § 17200.

61.     Defendant City of Orange was acting as a market participant rather than in its capacity to govern, and therefore is a "person" under § 17200.

62.     As a result of those practices, AmeriCare suffered damages in an amount to be determined at trial and is entitled to reasonable attorney's fees.

**COUNT IV**

**Declaration of Rights, Cal. Civ. Proc. Code § 1060**

63.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates by reference each preceding paragraph as though fully set forth at length herein.

64.     California Health and Safety Code Section 1797.224 provides that "[a] local EMS agency may create one or more exclusive operating areas in the development of a local plan, if a competitive process is utilized to select the provider or providers of the services pursuant to the plan."

65.     OCEMS has designated AO16, the area comprising Orange, as non-exclusive and has duly licensed AmeriCare as a prehospital EMS provider which Orange must place in rotation upon its request.

66.     Defendant City of Orange incorrectly argues that Section 1797.224 does not apply to it.

COMPLAINT

67.     AmeriCare therefore seeks a declaration from this Court declaring that the city lacks authority to create an exclusive operating area under Section 1797.224 and that the city repudiated any rights it once had under Section 1797.201.

## COUNT V

## Declaratory Judgment, 28 U.S.C. § 2201

68.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates by reference each preceding paragraph as though fully set forth at length herein.

69.     An actual and justiciable controversy exists between AmeriCare and the city concerning the city's violations of federal antitrust law and the California EMS laws.

70.     Contrary to the city's assertions, it has not retained any rights or powers under Section 1797.201.

71.     Contrary to the city's assertions, it does not have the authority to create an exclusive operating area.

72.     Contrary to the city's assertions, AmeriCare is entitled to be placed into rotation in AO16, which is designated as non-exclusive by OCEMS.

73.     Contrary to the city's assertions, it is not grandfathered because it did not have an existing EMS service that has been provided uninterrupted since January 1, 1981.

74.     Contrary to the city's assertions, it has attempted and succeeded at maintaining an illegal monopoly in restraint of interstate commerce that is not immune from liability under the state action doctrine.

16

Bona Law PC
BusinessJustice.com

75.     The city's actions and assertions described above have caused, and will continue to cause, irreparable harm to AmeriCare and the public. AmeriCare has no adequate remedy at law.

76.     AmeriCare therefore seeks a declaration from this Court declaring that the city lacks authority to create an exclusive operating area under Section 1797.224 and that the city repudiated any rights it once had under Section 1797.201. Moreover, AmeriCare seeks a declaration from this Court that the city has attempted and maintained an illegal monopoly under Section 2 of the Sherman Act for which it is not entitled to immunity under the state action doctrine.

### REQUEST FOR RELIEF

**WHEREFORE**, AmeriCare requests that this Court:

A.     Enter a temporary restraining order against Defendant to enjoin it from continuing its illegal acts under 15 U.S.C. § 26;

B.     Declare that Defendant's conduct violates Section 2 of the Sherman Act and California Health & Safety Code Sections 1797.201 and 1797.224;

C.     Declare that Defendant is not entitled to immunity from damages, interest, fees, and costs under 15 U.S.C. § 36 because it is acting as a market participant rather than a government entity that is merely regulating or interacting with private actors;

D.     Enter judgment against Defendant;

E.     Award AmeriCare compensatory damages in three times the amount sustained by it as a result of Defendant's actions, to be determined at trial as provided in 15 U.S.C. §§ 15(a) and 26;

BONA LAW PC
BUSINESSJUSTICE.COM

COMPLAINT

F.    Award AmeriCare pre- and post-judgment interest at the applicable rates on all amounts awarded, as provided in 15 U.S.C. §§ 15(a) and 26;

G.    Award AmeriCare its costs and expenses of this action, including its reasonable attorney's fees necessarily incurred in bringing and pressing this case, as provided in 15 U.S.C. §§ 15(a) and 26;

H.    Grant permanent injunctive relief under 15 U.S.C. § 26 to prevent the recurrence of the violations for which redress is sought in this complaint; and

I.    Order any other such relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims.

DATED: September 9, 2016    Bona Law PC

*/s/ Jarod Bona*

JAROD BONA

4275 Executive Square, Suite 200
La Jolla, CA 920370
858.964.4589
858.964.2301 (fax)
jarod.bona@bonalawpc.com

*Attorney for Plaintiff*

COMPLAINT

EXHIBIT A

## AGREEMENT TO PROVIDE LICENSING AND REGULATION OF AMBULANCE AND CONVALESCENT TRANSPORT SERVICE

THIS AGREEMENT, made and entered into this *12th* day of *Janual*, 1979, by and between the CITY OF ORANGE, hereinafter referred to as "CITY", and the COUNTY OF ORANGE, hereinafter referred to as "COUNTY".

WITNESSETH:

WHEREAS, CITY is desirous of contracting with COUNTY for the performance of the hereinafter described services within CITY'S boundaries by COUNTY through COUNTY'S Health Officer thereof; and

WHEREAS, COUNTY is agreeable to rendering such services on terms and conditions hereinafter set forth.

NOW, THEREFORE, IT IS AGREED as follows:

1.    COUNTY agrees, through the Health Officer of COUNTY to provide for the licensing and regulation of ambulance and convalescent transport service within the corporate limits of CITY, to the extent and in the manner hereinafter set forth.

Such services shall only encompass duties and functions of the type coming within the jurisdiction of and customarily rendered by the Health Officer under the laws of said COUNTY and the statutes of the State of California.

The level of service shall be that same basic level of service that is now, or is hereinafter provided, during the term of this agreement for unincorporated areas of COUNTY by said Health Officer.

The rendition of such services, the standard of performance and other matters incidental to the performance of such services, and the control of personnel so employed, shall remain in COUNTY.  In event of dispute between the parties as to the extent of the duties and functions to be

rendered hereunder, or the level and manner of performance of such service, the determination thereof made by the Health Officer of COUNTY shall be final and conclusive as between the parties hereto.

Such service shall include the enforcement of State statutes and such municipal code ordinances and regulation relating to the licensing and regulation of ambulance and convalescent transport service as CITY may adopt, as hereinafter provided.

2.   For the purpose of performing said functions, COUNTY shall furnish and supply all necessary labor, super-vision, equipment, and supplies necessary to maintain the level of service to be rendered hereunder.

Notwithstanding anything to the contrary, it is agreed that in all instances wherein special supplies, stationery, notices, forms and the like must be issued in the name of said CITY, the same shall be supplied by said CITY at its own cost and expense.

3.   All persons employed in the performance of such services and functions for said CITY shall be COUNTY employees and no CITY employee as such shall be employed by said COUNTY, and no person employed hereunder shall have any CITY pension, civil service, or any status or right.

For the purpose of performing such services and functions, and for the purpose of giving official status to the per-formance thereof where necessary, every COUNTY officer and employee engaged in the performance of any service hereunder shall be deemed to be an officer or employee of said CITY while performing services for said CITY, which services are within the scope of this agreement and are purely municipal functions.

- 2 -

4.   CITY shall not be called upon to assume any liability for the direct payment of any salaries, wages, or other compensation to any COUNTY personnel performing services hereunder for said COUNTY, or any liability other than provided for in this agreement.

Except as herein otherwise specified, CITY shall not be liable for compensation or indemnity to any COUNTY employee for injury or sickness arising out of his employment.

5.   COUNTY, its officers and employees, shall not be deemed to assume any liability for intentional or negligent acts of said CITY or of any officer or employee thereof.

6.   Unless sooner terminated as provided for herein, this agreement shall be effective *June 12*, 1979, and shall run for a period of one (1) year thereafter.  At the option of the City Council of said CITY, with the consent of the Board of Supervisors of said COUNTY, this agreement shall be renewable for successive periods of not exceeding one (1) year each.

In event CITY desires to renew this agreement for any succeeding one-year period, said City Council, not later than one hundred and twenty (120) days before the expiration date of this agreement, shall notify the Board of Supervisors of COUNTY that it wishes to renew the same, whereupon said Board of Supervisors, sixty (60) days after said notification, shall notify said CITY in writing of its willingness to accept such renewal for an additional one-year period or such other term as it deems advisable, otherwise such agreement shall finally terminate at the end of such one-year period.

Notwithstanding the provision of this paragraph hereinbefore set forth, either party may terminate this agreement of the first day of July of any year, upon notice in writing

- 3 -

**Exhibit A  Page 21**

to the other party of not less than two (2) calendar months prior to the day of said termination.

7.    Notwithstanding anything to the contrary herein contained, this contract shall be sooner terminated at any time that CITY fails to enact and to maintain in full force and effect, including the amount of fees provided, an ordinance similar to the provisions of Article 1, Division 9, Title 4, of the Codified Ordinances of the County of Orange, and other regulations which may be adopted by the Orange County Board of Supervisors.  This contract shall also be sooner terminated if CITY does not enact the same amendments to their municipal code as those adopted by COUNTY'S Board of Supervisors within one hundred and twenty (120) days after request to do so by COUNTY.  The COUNTY Health Officer, acting on behalf of the COUNTY, may use discretion and need not request CITY to adopt amendments which do not apply to CITY.

8.    For and in consideration of the rendition of the foregoing services by the COUNTY, CITY agrees that COUNTY may keep and retain any and all licenses and fees provided for by said Municipal Code Ordinance or Resolution of the City Council and collected by the COUNTY pursuant hereto. It is agreed that in connection therewith, COUNTY shall have all powers of CITY and shall receive all cooperation possible therefrom to enable efficient enforcement of such Municipal Code Ordinance and to effectuate collections called for thereunder.

9.    COUNTY shall retain all fees and revenue derived from the enforcement of the CITY Ordinance pertaining to licensing and regulating ambulance and convalescent transport service by COUNTY.

- 4 -

Exhibit A  Page 22

10.   COUNTY agrees that all services furnished by it
hereunder shall be in accordance with the laws of the State
of California, and that it will give the prescribed notices
required by law.

11.   COUNTY agrees to keep such books and records and
in such form and manner as the Auditor-Controller of COUNTY
shall specify.  Said books shall be open for examination by
said CITY at all reasonable times.

12.   To the extent authorized by law, the COUNTY shall
indemnify, hold harmless and defend the CITY, its officers,
agents and employees against all liability, claims, losses,
demands or actions for injury to or death of persons or
damages to property arising out of, or alleged to arise out
of, or in consequence of this agreement provided such
liability, claims, losses, demands or actions are claimed to
be due to the acts or omissions of the COUNTY, its officers,
agents or employees, including damages to the CITY Fixed
Assets, where such damages is caused by COUNTY hereunder in
the performance of this agreement.

To the extent authorized by law, the CITY shall indemnify,
hold harmless and defend the COUNTY, its officers, agents
and employees against all liability, claims, losses, demands
or actions for injury to or death of persons or damages to
property arising out of, or alleged to arise out of, or in
consequence of this agreement provided such liability,
claims, losses demands or actions are claimed to be due to
the acts or omissions of the CITY, its officers, agents or
employees in the performance of this agreement.  The above
indemnification provisions shall commence on *June 12* ,
1979, and shall continue thereafter so long as this agree-
ment is in effect.  The provisions of paragraphs 1, 3, 4, 5,

- 5 -

**Exhibit A  Page 23**

6, and 7 of Section 2778 of the California Civil Code, as said sections exists on *June 12*, 1979, shall be applicable to said provisions.  Transmittal to the CITY or COUNTY, as the case may be, of any pleadings served shall be deemed to be a request to defend.

IN WITNESS WHEREOF, the CITY OF ORANGE, caused this agreement to be signed by its Mayor and attested by its Clerk, and the County of Orange by order of its Board of Supervisors, has caused these presents to be subscribed by the Chairman of the Board the the seal of said Board to be affixed thereto and attested by the Clerk of said Board, all on the day and year first above written.

COUNTY OF ORANGE

by _____
   Chairman,
   Board of Supervisors

ATTEST:

by _____
   June Alexander
   Clerk of the Board of
   Supervisors of Orange
   County, California

DATED: _____

APPROVED AS TO FORM:

ADRIAN KUYPER, COUNTY COUNSEL

by _____
   Deputy

DATED: _____


CITY OF ORANGE,
a municipal corporation

by _____
   Mayor

ATTEST: CHARLOTTE M.. JOHNSTON, CMC
        City Clerk

by _____
   Deputy   Clerk of the Council

DATED: _____

APPROVED AS TO FORM:

by _____
   City Attorney

DATED: *June 15, 1979*


- 6 -


Exhibit A  Page 24

# city of orange



incorporated 1888

orange civic center • 300 east chapman avenue • orange, california 92666
post office box 449

**city clerk**
**(714) 532 0341**

September 15, 1980

Board of Supervisors
County of Orange
10 Civic Center Plaza
Santa Ana, CA 92702

Attention:  June Alexander

Dear Ms. Alexander:

On September 9, 1980, the City Council of the City of Orange authorized
an agreement between the City of Orange and the County of Orange, to provide
licensing and regulation of ambulances and convalescent transportation ser-
vices in the City of Orange.

Enclosed are three original copies of the agreement for your completion.
Please return an executed copy for our records, after the Board of Super-
visors has acted on said agreement.

Very truly yours,

Marilyn J. Jensen
City Clerk

MJJ:ms
cc: Jim Aynes, City Attorneys Office
    Kathy Hyland, Business Services Coordinator
Enc.

**Exhibit A  Page 25**

## MINUTES OF THE BOARD OF SUPERVISORS

## OF ORANGE COUNTY, CALIFORNIA

### June 12, 1979

IN RE:   AGREEMENTS        LICENSING AND REGULATION OF AMBULANCE AND
CONVALESCENT TRANSPORT SERVICE      CITY OF ORANGE
CITY OF PLACENTIA            CITY OF CYPRESS

On motion of Supervisor Riley, duly seconded and unanimously carried by Board members present, the Chairman and the Clerk are authorized to sign the Agreements to Provide Licensing and Regulation of Ambulance and Convalescent Transport Service, dated June 12, 1979, between the County of Orange and the following cities, as recommended by the Director of the Human Services Agency.

CITIES

City of Orange

City of Placentia

City of Cypress

IN RE:   AGREEMENT        LAW ENFORCEMENT SERVICES    CITY OF VILLA PARK

On motion of Supervisor Riley, duly seconded and unanimously carried by Board members present, the Chairman and the Clerk are authorized to sign the Agreement for Law Enforcement Services, dated June 12, 1979, between the County of Orange and the City of Villa Park, providing for law enforcement services from the Orange County Sheriff-Coroner Department, as recommended by the Orange County Sheriff-Coroner.

**Exhibit A  Page 26**

| | | |
|---|---|---|
| Ken Shuck, MICP | and | Philip Anthony |
| Ambulance Specialist | | Chairman, Board of Supervisors |
| Orange County EMS | | P.O. Box 687 |
| P.O. Box 355 | | Santa Ana, California 92702 |
| Santa Ana, California 92702 | | |

An excerpt from the minutes of a Regular Meeting of the City Council, City of Orange, California, held May 15, 1979:

IN RE APPROVAL OF CONSENT CALENDAR:
  Moved by Councilman Smith, seconded by Mayor Hoyt, and duly adopted, <u>approval was given all items on the Consent Calendar, including Addendum Item "T" - Orange County Rehabilitation Institute request for waiver of fees, per recommendations as follows:</u>

| A. | B. | C. | D. | E. | F. | G. |
|---|---|---|---|---|---|---|

  H.  Authorization was given Mayor and City Clerk, on behalf of the City of Orange, to execute agreement between the City of Orange and the County of Orange to provide licensing and regulation of Ambulance and Convalescent Transport Service.

| I. | K. | M. | O. | Q. | S. |
|---|---|---|---|---|---|
| J. | L. | N. | P. | R. | T. |

  AYES: Councilmen, Smith Mayor Hoyt, Perez.
  NOES: Councilmen, None.  ABSENT: Councilmen, Barrera, Beam.

I, CHARLOTTE M. JOHNSTON, CMC, City Clerk and ex-officio clerk of the Council, City of Orange, California, DO HEREBY CERTIFY that the foregoing is a true, full, and correct copy of that portion of the minutes of a regular meeting of the City Council held May 15, 1979, as appears on record in this office.

Witness my hand and seal this 25th day of June, 1979.

                                    Charlotte M. Johnston, CMC
                                    City Clerk and ex-officio
                                      clerk of the Council
                                    City of Orange, California


                                    By: Mildred Taylor
                                        Secretary II/Deputy

MVT/dmo
cc: Business License
    Ray Evans, Environmental
     Health Sanitarian (2)
    City Attorney
    Finance Department
    Records Division
    File Copy

Exhibit A  Page 27

AGR- 0293.A

## AGREEMENT TO PROVIDE LICENSING AND REGULATION OF
## AMBULANCE AND CONVALESCENT TRANSPORT SERVICE

THIS AGREEMENT, made and entered into this ~~10th~~ 13th day of ~~September~~ June , 1980, by and between the COUNTY OF ORANGE, hereinafter referred to as "COUNTY," and the CITY OF ____Orange____, hereinafter referred to as "CITY."

### WITNESSETH:

THAT WHEREAS, CITY is desirous of contracting with COUNTY for the performance of the hereinafter described services within CITY'S boundaries by COUNTY through COUNTY'S Health Officer thereof; and

WHEREAS, COUNTY is agreeable to rendering such services on terms and conditions hereinafter set forth;

NOW, THEREFORE, IT IS AGREED as follows:

1.   COUNTY agrees, through the Health Officer of COUNTY to provide for the licensing and regulation of ambulance and convalescent transport service within the corporate limits of CITY, to the extent and in the manner hereinafter set forth.

Such services shall only encompass duties and functions of the type coming within the jurisdiction of and customarily rendered by the Health Officer under the laws of said COUNTY and the statutes of the State of California.

The level of service shall be that same basic level of service that is, and shall be hereafter during the term of this agreement, provided for unincorporated areas of COUNTY by said Health Officer.

The rendition of such services, the standard of performance and other matters incidental to the performance of such services, and the control of personnel so employed, shall remain in COUNTY. In event of dispute between the parties as to the extent of the duties and functions to be rendered hereunder, or the level

**Exhibit A  Page 28**

and manner of performance of such service, the determination thereof made by the Health Officer of COUNTY shall be final and conclusive as between the parties hereto.

Such service shall include the enforcement of State statutes and such municipal code ordinances and regulations relating to the licensing and regulation of ambulance and convalescent transport service as CITY may adopt, as hereinafter provided for.

2. For the purpose of performing said functions, COUNTY shall furnish and supply all necessary labor, supervision, equipment, and supplies necessary to maintain the level of service to be rendered hereunder.

Notwithstanding anything herein contained, it is agreed that in all instances wherein special supplies, stationery, notices, forms, and the like must be issued in the name of said CITY, the same shall be supplied by said CITY at its own cost and expense.

3. All persons employed in the performance of such services and functions for said CITY shall be COUNTY employees and no CITY employee as such shall be taken over by said COUNTY, and no person employed hereunder shall have any CITY pension, civil service, or any status or right.

For the purpose of performing such services and functions, and for the purpose of giving official status to the performance thereof where necessary, every COUNTY officer and employee engaged in the performance of any service hereunder shall be deemed to be an officer or employee of said CITY while performing services for said CITY, which services are within the scope of this agreement and are purely municipal functions.

4. CITY shall not be called upon to assume any liability for the direct payment of any salaries, wages, or other compensation to any COUNTY personnel performing services hereunder for said COUNTY, or any liability other than provided for in this agreement.

**Exhibit A  Page 29**

Except as herein otherwise specified, CITY shall not be liable for compensation or indemnity to any COUNTY employee for injury or sickness arising out of his employment.

5. COUNTY, its officers and employees, shall not be deemed to assume any liability for intentional or negligent acts of said CITY or of any officer or employee thereof.

6. This agreement shall commence on _____ 9/10 6/12 19 80 and shall remain effective until terminated as provided herein. Either party may terminate the agreement by giving written notice of not less than one hundred twenty (120) days prior to the date of said termination. Such termination shall not effect the validity or term of any license issued by County.

7. Notwithstanding anything to the contrary herein contained, this contract shall be sooner terminated at any time that CITY fails to enact and to maintain in full force and effect, including the amount of fees provided, an ordinance similar to the provisions of Article 1, Division 9, Title 4, of the Codified Ordinances of the County of Orange, and other regulations which may be adopted by the Orange County Board of Supervisors. This contract shall also be sooner terminated if CITY does not enact the same amendments to their municipal code as those adopted by COUNTY'S Board of Supervisors within one hundred and twenty (120) days after request to do so by COUNTY. The COUNTY Health Officer, acting on behalf of the COUNTY, may use discretion and need not request CITY to adopt amendments which do not apply to CITY.

8. For and in consideration of the rendition of the foregoing services by the COUNTY, CITY agrees that COUNTY may keep and retain any and all licenses and fees provided for by said Municipal Code Ordinance or Resolution of the City Council and collected by the COUNTY pursuant hereto. It is agreed that in connection therewith, COUNTY shall have all powers of CITY and shall receive all cooperation possible therefrom to enable efficient

**Exhibit A Page 30**

enforcement of such Municipal Code Ordinance and to effectuate collectio.ıs called for thereunder.

9. COUNTY shall retain all fees and revenue derived from the enforcement of the CITY Ordinance pertaining to licensing and regulating ambulance and convalescent transport service by COUNTY.

10. COUNTY agrees that all services furnished by it hereunder shall be in accordance with the laws of the State of California, and that it will give the prescribed notices required by law.

11. COUNTY agrees to keep such books and records and in such form and manner as the Auditor-Controller of COUNTY shall specify. Said books shall be open for examination by said CITY at all reasonable times.

12. To the extent authorized by law, the COUNTY shall indemnify, hold harmless and defend the CITY, its officers, agents and employees against all liability, claims, losses, demands or actions for injury to or death of persons or damages to property arising out of, or alleged to arise out of, or in consequence of this agreement provided such liability, claims, losses, demands or actions are claimed to be due to the acts or omissions of the COUNTY, its officers, agents or employees, including damage to the CITY Fixed Assets, where such damage is caused by COUNTY hereunder in the performance of this agreement.

To the extent authorized by law, the CITY shall indemnify, hold harmless and defend the COUNTY, its officers, agents and employees against all liability, claims, losses, demands or actions for injury to or death of persons or damages to property arising out of, or alleged to arise out of, or in consequence of this agreement provided such liability, claims, losses, demands or actions are claimed to be due to the acts or omissions of the CITY, its officers, agents or employees in the performance of this agreement. The above indemnification provisions shall commence on _____ 9/10/80 6/12/80

**Exhibit A Page 31**

-4-

and shall continue thereafter so long as this agreement is in effect.  The provisions of paragraphs 1, 3, 4, 5, 6, and 7 of Section 2778 of the California Civil Code, as said section exists on 6/12/80 9/10/80 ____, shall be applicable to said provisions.  Transmittal to the CITY or COUNTY, as the case may be, of any pleadings served shall be deemed to be a request to defend.

IN WITNESS WHEREOF, the CITY of _____ ORANGE _____, by resolution duly adopted by its City Council, caused this agreement to be signed by its Mayor and attested by its Clerk, and the County of Orange by order of its Board of Supervisors, has caused these presents to be subscribed by the Chairman of said Board and the seal of said Board to be affixed thereto and attested by the Clerk of said Board, all on the day and year first above written.

COUNTY OF ORANGE

by _____
Chairman, Board of Supervisors

ATTEST:

by _____
June Alexander
Clerk of the Board of Supervisors
of Orange County, California

DATED: _____

APPROVED AS TO FORM:

ADRIAN KUYPER, COUNTY COUNSEL

by _____
Deputy

DATED: 10/21/80

SIGNED AND CERTIFIED THAT A COPY OF
THIS DOCUMENT HAS BEEN DELIVERED TO
THE CHAIRMAN OF THE BOARD.

_____
JUNE ALEXANDER
Clerk of the Board of Supervisors
County of Orange, California

CITY OF ____ ORANGE ____
a municiple corporation

by _____
Mayor

ATTEST:

by _____
Clerk of the Council

DATED: _____9/11/80_____

APPROVED AS TO FORM:

by _____
City Attorney

DATED: Sept 10, 1980

**Exhibit A  Page 32**

-5-

## RULES AND REGULATIONS

### FOR

### WHEELCHAIR VANS

(Convalescent Transportation)

4/14/81

SECTION I - PURPOSE

To establish rules for equipment, vehicles, personnel, operation and standards for organizations whose express purpose is transportation of persons in need of medical attention and who are permanently or temporarily confined to wheelchairs or require medical assistance.

SECTION II - AUTHORITY

Orange County Ambulance Ordinance, Section 4-9-20 states that the Health Officer shall make all necessary and reasonable rules and regulations subject to approval of the Board of Supervisors, covering ambulance and convalescent transport vehicles, equipment, personnel and standards of dispatch.

SECTION III - WHEELCHAIR VAN DESCRIPTIONS

"Wheelchair Van" means a vehicle which is modified, equipped and used for the primary purpose of providing nonemergency medical transportation to persons temporarily or permanently confined to wheelchairs and which is not equipped with medical equipment or personnel required for the specialized care provided in an ambulance.

SECTION IV - WHEELCHAIR VAN PATIENT - DESCRIPTION

"Wheelchair Van Patient" means a person temporarily or permanently confined to a wheelchair whose medical condition is such that the patient requires transportation to a medical facility and requires minimal assistance.

SECTION V - RESTRICTIONS

The use of stretchers in the wheelchair van is expressly prohibited. Nothing contained in this section shall apply to the transportation of eligible Medical beneficiaries insofar as such provisions are in conflict with equipment and personnel standards for reimbursement established by the California Department of Health.

**Exhibit A Page 33**

SECTION VI - WHEELCHAIR VAN EQUIPMENT

Wheelchair vans operating pursuant to this division shall meet the following minimum standards. All equipment must meet or exceed state standards.

1. Possess one standard-sized wheelchair.

2. Loading entrance large enough to accommodate a patient comfortably seated in a standard-sized wheelchair.

3. Emergency exit, other than loading entrance, that can accommodate a standard-sized wheelchair.

4. Locking devices for all doors. All door latches shall be operable from inside and outside on all vehicles manufactured and first registered after January 1, 1980.

5. Seating capacity to accomodate at least two patients seated in standard-sized wheelchairs.

6. Approved seat belt assemblies for the driver and any front seat passengers.

7. Fasteners to secure the wheelchair to the vehicle which must be of suffi-cient strength to prevent the chairs from rotating to prevent the chairs wheels from leaving the floor in case of sudden movement and to support the chairs and patients in the event the vehicle is overturned or upset.

8. Lift or ramp with a load capacity of at least 450 pounds which can be secured to the vehicle.

9. Foot stool or extra step for loading.

10. One interior light.

11. Portable, battery-operated light.

12. Controlled heating and air conditioning system in the patient compartment.

13. Seats covered with washable vinyl, or similar impermeable material which shall be in sanitary and functional condition.

-2-

Exhibit A Page 34

14. Spare wheel, jack and tire tools necessary to make minor repairs except when operating where service is customarily and immediately available.

15. Current maps of the streets in the area where service is provided.

16. Fire extinguisher, 5 lb type 4-B C dry powder or carbon dioxide. Vaporizing liquid extinguishers shall not be carried or used.

17. Two-way radio communication with a license base station (Emergency or Business Frequency) C.B. radios are prohibited.

18. First aid kit meeting American Red Cross standards.

SECTION VII - VEHICLE IDENTIFICATION

Wheelchair van operating pursuant to this division shall meet the following identification requirements.

1. Identification display of the name under which the wheelchair van is doing business or providing service, on both sides and rear of each wheelchair van in letters that contrast sharply with the background. Lettering for upper case letters shall not be less than four inches in height, or proportionate width, and of color readily visible during daylight. Lower case letters shall be no less than three-fourths of the upper case height. All wheelchair vans operated under single license shall display the same identification.

2. Must meet or exceed all state standards.

SECTION VIII - OPERATIONAL POLICIES

Wheelchair van companies operating pursuant to this division shall have written Operational Policies addressing the following issues. Said policies shall be filed with the office of Emergency Medical Services upon original application and/or as amended.

1. Policy on securing patients during loading, unloading and in transport.

2. Policy on smoking in the vans.

3. Policy for handling intransit emergencies.

-3-

Exhibit A Page 35

4. Policies for handling receipt of an apparent emergency call.

5. Policies on advertising; to include copies of all information distributed.

6. Policies on hours of operation and geographic areas to be served.

## SECTION IX - VEHICLE INSPECTION

The following items shall be checked by EMS for operational capabilities on an annual basis or as deemed necessary by the department.

1. Headlamps/turn signals/back-up lights.

2. Four-way flashers.

3. Tail lamps/stop lamps.

4. Windshield wipers.

5. Heating/defrosting/air conditioning.

6. Exhaust system.

7. Windshield and any other glass.

8. Horn.

9. Steering.

10. Brakes firm at one half pedal.

11. Emergency brake.

12. Tires.

13. Spare tire/jacks/tools.

14. Mirrors.

15. An approved break certificate issued not more than (30) days prior to inspection. Must be presented during annual inspection.

## SECTION X - DISPATCH OF PARAMEDICS

Each wheelchair van operator who receives a report from a private party of a medical emergency and in the judgement of the operator is a true medical emergency, shall immediately notify the appropriate fire/paramedic dispatcher in that area.

-4-

**Exhibit A Page 36**

SECTION XI - REPORT OF PUBLIC SAFETY INFORMATION

Each operator who receives a report from a private party of an injury or medical condition resulting from a vehicle accident, aircraft accident, gunshot wound, drug overdose, felonious act, or other information of possible criminal activity, shall immediately report the receipt of such call and the circumstances to the Police, Sheriff, and/or California Highway Patrol as appropriate.

SECTION XII - ODOMETER CHECKS

Every County licensed wheelchair van operator making any patient charges on the basis of mileage shall have the odometer of each of their vehicles checked and certified by the County Weights and Measures Department, no less often than every twelve months. If the County receives a complaint regarding overcharges due to a suspected convalescent transport vehicle odometer error, the County may require the operator to have that suspected wheelchair transport odometer rechecked within 15 days. When the odometer is checked, the seal shall be posted in a conspicuous place within the vehicle.

SECTION XIII - WHEELCHAIR VAN PERSONNEL

Wheelchair vans shall be operated by a County certified drivers, and where applicable an attendant. These persons shall:

1. Possess a current Claifornia driver's license, Class III or better.

2. Possess at least a current American Red Cross First Aid and personal safety certification or equivalent, and a valid CPR card. Person employed at the time of adoption of the regulations shall have sixty (60) days from date of adoption to comply with the CPR requirement. Persons hired after the adoption date shall possess a valid CPR card at the time of hire.

3. Have passed a physical examination within the past ninety (90) days of application to produce and posses a current county prescribed physical form.

-5-

4. Not act in the capacity of a driver or attendant when such person:

    (a) is required by law to register as a sex offender or any offense involving force, duress, threat or intimidation.

    (b) habitually or excessively uses or is addicted to narcotics or dangerous drugs or has been convicted during the preceeding seven years of any felony offense relating to the use, sale, possession or transportation of narcotics, addiction to dangerous drugs or alcohol.

    (c) habitually or excessively uses intoxicating beverages.

5. Possess a certificate issued by the Health Officer indicating compliance with the requirements of this Section. Application for such Certificate shall be in the form required by the Health Officer and shall be accompanied by the fee established by resolution of the Board of Supervisors. The term of said certificate shall be 2 years from the date of application.

6. Undergo a complete criminal history record check prior to issuance of a permanent Certificate. The record check must be repeated every 4 years.

SECTION XIV - DISPLAY OF LICENSE AND CONVALESCENT TRANSPORT RATES

Each license shall display his license and a list of wheelchair transport rates in a prominent location in each business office. In addition each person shall present the department with a current rate schedule.

SECTION XV - PERSONNEL IDENTIFICATION

Each wheelchair transport driver licensed by the County shall wear a name badge indicating his name, and name of the employing company.

SECTION XVI - BUILDING INSPECTION

Each wheelchair transport service shall have an inspection made of each requested licensed location by the Orange County Environmental Management Agency - Regulation Function for compliance with the building code, zoning code and other related codes.

-6-

SECTION XVII - APPLICATION FOR NEW LICENSE

Application to be made as stated in Section 4-9-5 #13 C of the Orange County Ambulance Ordinance.

SECTION XVIII - PROCESS FOR REVOCATION OF CONVALESCENT TRANSPORT SERVICE LICENSE

A. A convalescent transport service known or thought to be deficient in one or more of the basic requirements for continued licensure. may be subject to an investigation by the Health Officer or his deputy, possibly leading to a revocation of license.

B. Such an investigation may be requested in writing by the hospitals with which the subject convalescent transport service is affiliated, public safety agencies, or a recipient of service.

C. Failure of convalescent transport service to cooperate with investigation of the Health Officer shall be grounds for revocation of certification. However, the investigation shall, whenever possible be conducted so as not to interfere with the normal operation of the licensee.

D. If the facts warrant, a hearing will be scheduled. The convalescent transport service shall be notified at least 15 days prior to the hearing date. This notice may be waived in writing by the convalescent transport service. Such notification shall contain:

   1. The date, time, place and hearing officer for the hearing.

   2. The specific charges.

   3. Specific person to whom the convalescent transport service should address any responses or inquiries.

E. The licensee shall, as a matter of right, be entitled continuance of the hearing for a period not to exceed thirty calendar days. This continuance shall not deprive the Health Officer of the power to suspend a license or certificate pending a hearing pursuant to Sections 4-9-16 of the Orange County Ambulance Ordinance. The County may not obtain a continuance without a showing of good

Exhibit A Page 39

cause therefore.

F. The convalescent transport service shall have these rights:  To be represented; to call and examine witnesses; to introduce evidence; to cross examine the opposing witnesses.

G. The hearing need not be conducted according to technical rules relating to evidence and witnesses.  Any relevant evidence shall be admitted under oath if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs.  Hearsay evidence may be used for the purpose of supplementing or explaining other evidence but shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions.

H. The Health Officer shall have the burden of proof.  No discipline shall be imposed on a lecensee unless it is shown by clear and convincing evidence, except as provided by Section 4-9-16 of the Orange County Ambulance Ordinance #3022, that the licensee is in violation of the Orange County Ordinance.

I. Following the above hearing, the Hearing Officer shall within 10 days, report the findings of fact in writing to the Health Officer which support a recommendation to:  1.  Dismiss charges;

   2.  Revoke licensure; or

   3.  Restrict licensure.

J. The Health Officer will then notify the subject convalescent transport service of his final decision and action in writing within five days.  Nothing in this regulation shall preclude an immediate suspension of the subject convalescent transport services complete licensure or any portion thereof by the Health Officer or by his Deputy, which shall be based on written documentation reports filed with the Health Officer, pending a hearing through the prior mentioned process.  If the licensee has:

-8-

1.  Violated any of the provisions of the Orange County Ambulance Ordinance #3022, or any of the rules and regulations adopted pursuant thereto.

2.  Violated any ordinance of the County or Statute of the State of California, or the United States, which violation indicates the unfitness or indifference of the holder to offer safe and adequate convalescent transport services or would constitute grounds for denial of the license.

3.  Committed and act which would have been grounds for denial of license. Said suspension shall not exceed sixty (60) days.

K.  Appeal to the Health Officer's decision may be made to the Board of Supervisors in the manner described in Section 4-9-13 of the Orange County Ambulance Ordinance.

L.  Revocation and suspension of convalescent transport driver certificate shall follow the same guidelines as indicated in this section.

## SECTION XII - LICENSING FEES

Each convalescent transport service operating in the unicorporated territory or contract cities of Orange County shall be subject to the following fees and licensure.

## FEE SCHEDULE

| | |
|---|---|
| Company/Provider Licensing Fees | $300.00/annual |
| Vehicular Inspection Fee/per vehicle | 50.00/annual |
| Personal Licensing Fee/per person | 35.00/bi-annual |

-9-

Exhibit A  Page 41

# RULES AND REGULATIONS

## FOR

## LITTER VANS

(Convalescent Transportation Service)

5/12/81

### SECTION I - PURPOSE

To establish rules for the operation of litter van equipment, vehicles, personnel as well as established standards for dispatch.

### SECTION II - AUTHORITY

Orange County Ambulance Ordinance, Section 4-9-20 states that the Health Officer shall make all necessary and reasonable rules and regulations subject to approval of the Board, covering ambulance and convalescent transport vehicles, equipment, personnel and standards of dispatch.

### SECTION III - LITTER VAN DESCRIPTION

A vehicle which is modified, equipped, and used for the purpose of proceeding non-emergency medical transportation in those patients with stable medical conditions who require the use of a litter or gurney and which is not routinely equipped with the medical equipment or personnel required for the specialized care provided in an emergency ambulance.

### SECTION IV - LITTER VAN PATIENT - DESCRIPTION

Litter van patient means a patient whose medical condition is such that the patient may be transported in a litter van and requires minimal assistance and not requiring emergency medical care.

### SECTION V - RESTRICTION

The transportation of patients requiring emergency medical care or admission to an acute care medical facilities emergency department shall be expressly prohibited. Nothing contained in this section shall apply to the transportation of eligible MEDI-CAL beneficiaries insofar as such provisions are in conflict with equipment and

**Exhibit A  Page 42**

1   personnel standards for reimbursement established by the California Department of Health.

2   SECTION VI - LITTER VAN EQUIPMENT

3   Litter vans operating pursuant to this division shall meet the following minimum stand-

4   ards. All equipment must meet or exceed state standards.

5       1.  One two-man gurney with mattress with upper and lower restraining straps.

6           (One man gurney and use of recliner wheelchairs prohibited.)

7       2.  Loading entrance large enough to accommodate a patient comfortably, lying on a

8           standard size gurney.

9       3.  Emergency exit other than loading entrance  that can accommodate a standard size

10          gurney.

11      4.  Locking devices for all doors.  All locking devices and door latches shall be

12          operable from inside and outside the vehicles on all vehicles manufactured and

13          first registered after January 1, 1980.

14      5.  Approval seat belt assemblies for the driver, attendant and any passengers.

15      6.  Fastener to secure the gurney to the vehicle which must be of sufficient

16          strength to permit the gurney from rolling or sliding, to prevent the gurney

17          from leaving the floor in case of sudden movement, and to support the gurney

18          and in the event the vehicle is overturned or upset.

19      7.  One interior light.

20      8.  Portable, battery-operated light.

21      9.  Controlled heating and air conditioning system in the patient compartment.

22      10. Seats covered with washable vinyl or similar impenetrable material which should

23          be in sanitary and functional condition.

24      11. Spare wheel, jack and tire tools necessary to make minor repairs except when

25          operating where services and repair cars are customarily and immediately avail-

26          able.

27      12. Current maps of the streets in the area where service is provided.

28      13. Fire extinguisher, 5 lb. type 4-B C dry powder or carbon dioxide.  Vaporizing

-2-

Exhibit A  Page 43

liquid extinguisher shall not be carried or used.

14. Two-way radio communication with a licensed base station (emergency or business frequency).  The use of CB radios is prohibited.

15. Basic First Aid Kit to consist of:

    a) Two padded mouth gags (or equivalent)

    b) Six 2" or 3" soft, rolled stretch bandages (Kerlex or Kling).

    c) Two tourniquets

    d) Bandage scissors

    e) 50 - 4" x 4" gauze sponges

    f) Four 3" x 3" gauze sponges

    g) Two rolls 1", 2", 3" adhesive tape

    h) One B/P manometer (hand held)

    i) One stethoscope

SECTION VII - VEHICLE IDENTIFICATION

Litter vans operating pursuant to this division shall meet the following identification requirements.

1. Identification display of the name under which the litter van is doing business or providing service, on both sides and rear of each van in letters that contrast sharply with the background.  Lettering for upper case letters shall be not less than four inches in height, or proportionate width, and of color readily visible during daylight.  Lower case letters shall be no less than three-fourths of the upper case height.  All vans operated under a single license shall display the same identification.  A litter van shall not display identification as an ambulance.

2. Must meet or exceed all state standards.

SECTION VIII - OPERATIONAL POLICIES

Litter van companies operating pursuant to this division shall have written Operational

Exhibit A  Page 44

-3-

Policies addressing the following issues.  Said policies shall be filed with the Office of Emergency Medical Services upon original application and/or as amended.

1. Policy on securing patients during loading, unloading and in transport.

2. Policy on smoking in vans.

3. Policy for handling in-transit emergencies.

4. Policies for handling receipt of an apparent emergency call.

5. Policies on advertising; to include copies of all information distributed.

6. Policies on hours of operation and geographic areas to be served.

7. Description of patient population.

SECTION IX - VEHICLE INSPECTION

The following items shall be inspected on an annual basis or as deemed necessary by the department.

1. Headlamps/turn signals/backup lights.

2. Four-way flashers.

3. Tail lamps/stop lamps.

4. Windshield wipers.

5. Heating/defrosting/air conditioning.

6. Exhaus  system.

7. Windshield and another glass.

8. Horn.

9. Steering.

10. Brakes firm at one-half pedal.

11. Emergency brake.

12. Tires.

13. Spare tire/jacks/tools.

14. Mirrors.

15. An approved brake certificate issued not more than 20 days prior to inspection.

16. Medical supplies.

**Exhibit A  Page 45**

1 SECTION X - DISPATCH OF PARAMEDICS

2 Each litter van operator who receives a report from a private party of a medical emer-
3 gency and in the judgement of the operator is a true medical emergency, shall immediately
4 notify the appropriate fire/paramedic dispatcher in that area.

5 SECTION XI - REPORT OF PUBLIC SAFETY INFORMATION

6 Each operator who receives a report from a private party of an injury of medical condi-
7 tion resulting from a vehicle accident, aircraft accident, gunshot wound, drug overdose,
8 felonious act, or other information of possible criminal activity, shall immediately
9 report the receipt of such call and the circumstances to the Police, Sheriff, and/or
10 California Highway Patrol as appropriate.

11 SECTION XII - ODOMETER CHECKS

12 Every County licensed litter van operator making any patient charges on the basis of
13 mileage shall have the odometer of each of their vehicles checked and certified by the
14 County Weights and Measures Department, no less often than every twelve months. If the
15 County receives a complaint regarding overcharges due to a suspected convalescent tran-
16 sport vehicle odometer error, the County may require the operator to have that suspected
17 convalescent transport odometer rechecked within 15 calendar days. When the odometer is
18 the seal shall be posted in a conspicuous place within the vehicle.

19 SECTION XIII - LITTER VAN PERSONNEL

20 Litter vans shall be operated by County certified drivers. and an attendant. These
21 persons shall:

22     1. Possess a current California driver's license, Class III or better.

23     2. Possess a current EMT-1A certification issued by an approved college and a
24        valid CPR card.

25     3. Have passed a physical examination within the past ninety (90) days of
26        application to produce and possess a current county prescribed physical form.

27     4. Not act in the capacity of a driver or attendant when such person:

28        a) is required by law to register as a sex offender or has been convicted

**Exhibit A Page 46**

-5-

1        of any offense involving force, duress, threat or intimidation.

2      b)  habitually or excessively uses or is addicted to narcotics or dangerous

3          drugs or has been convicted during the preceeding seven years of any felony

4          offense relating to the use, sale, possession or transportation of narcotics,

5          addiction to dangerous drugs or alcohol.

6      c)  habitually or excessively uses intoxicating beverages.

7    5.  Possess a certificate issued by the Health Officer indicating compliance with

8       the requirements of this Section.  Application for such Certificate shall be in

9       the form required by the Health Officer and shall be two (2) years from date of

10      application.

11   6.  Undergo a complete criminal history record check prior to issuance of a perma-

12      nent Certificate.  The record check must be repeated every four years.

13 SECTION XIV - DISPLAY OF LICENSE AND CONVALESCENT TRANSPORT RATES

14 Each licensee shall display his license and a list of service rates in a prominent lo-

15 cation in each business office.  In addition each person shall present the department

16 with a current rate schedule.

17 SECTION XV - PERSONNEL IDENTIFICATION

18 Each litter van driver licensed by the County shall wear a name badge indicating his

19 name, and name of the employing company.

20 SECTION XVI - BUILDING INSPECTION

21 Each litter van service shall have an inspection made of each requested licensed loca-

22 tion by the Orange County Environmental Management Agency - Regulation Function for

23 compliance with the building code, zoning code and other related codes.

24 SECTION XVII - APPLICATION FOR NEW LICENSE

25 Application to be made as stated in Section 4-9-5 of the Orange County Ambulance Ordin-

26 ance.

27 SECTION XVII - PROCESS FOR REVOCATION OF CONVALESCENT TRANSPORT SERVICE LICENSE

28 A.  A litter van service known or thought to be deficient in one or more of the basic

**Exhibit A  Page 47**

requirements for continued licensure, may be subject to an investigation by the Health Officer of his deputy, possibly leading to a revocation of license.

B. Such an investigation may be requested in writing by the hospitals with which the subject service is affiliated, public safety agencies, or a recipient of service.

C. Failure of the service to cooperate with investigation of the Health Officer shall be grounds for revocation of certification. However, the investigation shall, whenever possible, be conducted so as not to interfere with the normal operation of the licensee.

D. If the facts warrent, a hearing will be scheduled. The service shall be notified at least 15 days prior to the hearing date. This notice may be waived in writing by the service. Such notification shall contain:

1. The date, time, place, and hearing officer for the hearing.

2. The specific changes.

3. Specific person to whom the service should address any responses or inquiries.

E. The licensee shall, as a matter of right, be entitled continuance of the hearing for a period not to exceed thirty calendar days. This continuance shall not deprive the Health Officer of the power to suspend a license or certificate pending a hearing pursuant to Sections 4-9-16 of the Orange County Ambulance Ordinance. The County may not obtain a continuance without a showing of good cause therefore.

F. The litter van service shall have these rights: To be represented, to call and examine witnesses; to intoduce evidence; to cross examine opposing witnesses.

G. The hearing need not be conducted according to technical rules relating to evidence and witnesses. Any relevant evidence shall be admitted under oath if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs. Hearsay evidence may be used for the purpose of supplementing or explaining other evidence but shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions.

H. The Health Officer shall have the burden of proof. No discipline shall be imposed

**Exhibit A  Page 48**

1   on a licensee unless it is shown by clear and convincing evidence, except as pro-

2   vided by Section 4-9-16 of the Orange County Ambulance Ordinace (#3022), that the

3   licensee is in violation of the Orange County Ordinance.

4   I. Following the above hearing, the Hearing Officer shall within 10 days report the

5      findings of fact in writing to the Health Officer which support a recommendation to:

6      1.  Dismiss charges;

7      2.  Revoke licensure; or

8      3.  Restrict licensure.

9   J. The Health Officer will then notify the subject service of his final decision and

10     action in writing within five days. Nothing in this regulation shall preclude an

11     immediate suspension of the subject convalescent transport services complete licen-

12     sure or any portion thereof by the Health Officer of his Deputy, which shall be

13     based on written documentation reports filed with the Health Officer, pending a

14     hearing through the prior mentioned process if the licensee has:

15     1.  Violated any of the provisions of the Orange County Ambulance Ordinance (#3022),

16         of any of the rules and regulations adopted pursuant thereto.

17     2.  Violated any ordinance of the County or Statute of the State of California

18         or the United States, which violation indicates the unfitness or indifference

19         of the holder to offer safe and adequate convalescent transport services or

20         would constitute grounds for denial of the license.

21     3.  Committed an act which would have been grounds for denial of license. Said

22         suspension shall not exceed sixty (60) days.

23  K. Appeal to the Health Officer's decision may be made to the Board of Supervisors in

24     the manner described in Section 4-9-13 of the Orange County Ambulance Ordinance.

25  L. Revocation and suspension of litter van driver certificate shall follow the same

26     guidelines as indicated in this section.

27  SECTION XIX - LICENSING FEES

28  Each litter van service operating in the unincorporated territory or contract cities

Exhibit A   Page 49

1  of Orange County shall be subject to the following fees per licensure.

2

3

4  FEE SCHEDULE:

5

6          Company/Provider Licensing Fees        $300.00/annual
        Vehicular Inspection Fee/per vehicle    100.00/annual
7          Personal Licensing Fee/per person     35.00/bi-annual

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit A   Page 50**

# COUNTY OF ORANGE

## HUMAN SERVICES AGENCY

**MARGARET C. GRIER**
DIRECTOR

**L. REX EHLING, M.D.**
HEALTH OFFICER

### PUBLIC HEALTH AND MEDICAL SERVICES
515 N. SYCAMORE STREET
SANTA ANA, CALIFORNIA 92701
(714) 834-3155
Mailing Address: P.O. BOX 355
SANTA ANA, CA 92702
EMERGENCY MEDICAL SERVICES
(714) 834-6447

December 24, 1980

Marilyn J. Jansen, City Clerk
City of Orange
Orange Civic Center
300 E. Chapman Ave.
Orange, CA   92666

SUBJECT:   Agreement with the County of Orange for
           Administration of City's Ambulance Ordinance

Dear Ms. Jansen:

The Board of Supervisors, at its meeting of November 4, 1980,
approved the subject agreement between the County and City to
provide licensing and regulation of ambulance and convalescent
transport service.

We are attaching two copies of the fully executed agreement
for your files.

Very truly yours,

Gary Kotton, Ambulance Specialist
Emergency Medical Services

GR/ms

cc:   Betty O'Rourke
      Lt. Stan Millar
      Kathy Hyland,
      Business License Division

**Exhibit A  Page 51**

Case 8:16-cv-01680 Document 1 Filed 09/09/16 Page 54 of 81 Page ID #:54

MINUTES OF THE BOARD OF SUPERVISORS

OF ORANGE COUNTY, CALIFORNIA

November 4, 1980

---

IN RE:     AGREEMENTS     AMBULANCE LICENSING     VARIOUS CITIES
          On motion of Supervisor Anthony, duly seconded and unanimously
carried, the Clerk of the Board, on behalf of the Board of Supervisors, is
authorized to execute the Agreements, dated November 4, 1980 between the
County of Orange and the Cities of Laguna Beach, La Palma, Westminster,
Orange, Cypress, Placentia, Irvine and Brea, providing licensing and
regulation of ambulance and convalescent transport service.


IN RE:     AGREEMENT     1981 GORDON BENNETT BALLOON RACE
          CITY OF FOUNTAIN VALLEY     GORDON BENNETT BALLOON RACE, INC.
          On motion of Supervisor Anthony, duly seconded and unanimously
carried, the Clerk of the Board, on behalf of the Board of Supervisors, is
authorized to execute the Agreement, dated November 4, 1980 between the
Orange County Harbors, Beaches and Parks District, the City of Fountain
Valley and Gordon Bennett Balloon Race, Inc. to conduct the 1981 Gordon
Bennett Balloon Race on April 25 and 26, 1981, at Mile Square Regional
Park.


IN RE:     AGREEMENT     LAGUNA BEACH SENIOR CITIZEN BUS RIDE PROGRAM
          CITY OF LAGUNA BEACH
          On motion of Supervisor Anthony, duly seconded and unanimously
carried, the Clerk of the Board, on behalf of the Board of Supervisors,
is authorized to execute the Agreement, dated November 4, 1980, between
the County of Orange and the City of Laguna Beach to allow the
continuation of the Laguna Beach Senior Citizens bus ride program in
Laguna Beach for the period of October 1, 1980 to September 30, 1981.

**Exhibit A  Page 52**



**COUNTY OF ORANGE**

**HUMAN SERVICES AGENCY**

MARGARET C. GRIER
DIRECTOR

L. REX EHLING, M.D.
HEALTH OFFICER

**PUBLIC HEALTH AND MEDICAL SERVICES**
515 N. SYCAMORE STREET
SANTA ANA, CALIFORNIA 92701
(714) 834-3155
Mailing Address: P.O. BOX 355
SANTA ANA, CA 92702

EMERGENCY MEDICAL SERVICES
(714) 834-6447

August 26, 1980

Kathy Hyland
Business License Division
City of Orange
300 East Chapman
Orange, CA  92666

Dear Kathy:

A review of our records indicates that the agreement between the City of Orange and the County to provide Licensing and Regulations of Ambulance and Convalescent Transport Services is due for renewal.  For your convenience, enclosed are three copies of the new agreement, said agreement has been drafted to eliminate the expiration date.  Please return the executed agreements at your earliest convenience.

Thank you in advance for your cooperation.  Should you have any questions, please do not hesitate to call.

Sincerely,

Gary Rotton, Ambulance Specialist
Emergency Medical Services

GR/ms

cc:  City Clerk
Enclosures

ITEM NO. _2.3_ PAGE _2_

Exhibit A  Page 53

CITY COUNCIL MINUTES
OF A REGULAR MEETING

ORANGE, CALIFORNIA
SEPTEMBER 9, 1980

The City Council of the City of Orange, California, convenes this
9th day of September, 1980 at 4:00 p.m. in a Regular Meeting in the
Council Chambers Civic Center, 300 East Chapman Avenue, Orange, California.

| AGENDA | MOTION | MINUTES |
|---|---|---|
| **4:00 P.M. SESSION** | | |
| PLEDGE OF ALLEGIANCE TO THE FLAG | | |
| ROLL CALL: | PRESENT | Councilmen Barrera, Smith, Mayor Beam, Perez and Beyer |
| | ABSENT | None |
| **APPROVAL OF MINUTES** | | |
| Regular Meeting, August 19, 1980 | MOTION<br>SECOND<br>AYES | Smith<br>Beyer<br>Barrera, Smith, Mayor Beam, Perez, Beyer<br><br>Approved as mailed. |
| Regular Meeting, August 26, 1980 | MOTION<br>SECOND<br>AYES | Smith<br>Beyer<br>Barrera, Smith, Mayor Beam, Perez, Beam<br><br>Approved as mailed. |
| CONSENT CALENDAR | | |
| 2.1  Authorize Mayor and Director of Finance to draw warrants on City Treasurer in payment of demands. | | Approved. |
| 2.2  Authorize employment of consulting firm to prepare Master Plan of Sewers for City of Orange as currently budgeted. | | Approved employment of Willdan Associates at a cost not to exceed $45,500 (Sewer Construction) Fund 190-50-P269-126. |
| 2.3  Consider renewal of agreement between City of Orange and County to provide licensing and regulation of ambulance and convalescent transport services. | | Authorized Mayor and City Clerk to execute agreement on behalf of City. |
| 2.4  Consider request by Holy Family Cathedral for permission to conduct Annual Church Fiesta September 26, 27, and 28, 1980, waiving fees. | | Approved. |

**Exhibit A  Page 54**

AGR-0293.A.1

# FIRST AMENDMENT

## TO AGREEMENT

### TO PROVIDE LICENSING AND REGULATION OF

### AMBULANCE AND CONVALESCENT TRANSPORT SERVICE

THIS FIRST AMENDMENT is made to that certain Agreement dated

_June 12_ , 19 _80_ , hereinafter referred to as the "Agreement," by and

between the COUNTY OF ORANGE, a political subdivision of the State of

California, and the CITY OF _ORANGE_ .

    1.   All references in the Agreement to the "Health Officer" are

hereby changed to refer to the "Health Care Agency."

    2.   Any reference in the Agreement to convalescent transport

services, or the licensing thereof, is hereby deleted.

    IN WITNESS WHEREOF, the parties have executed this First Amend-

ment to the Agreement.

Dated: _____

COUNTY OF ORANGE

SIGNED AND CERTIFIED THAT A
COPY OF THIS DOCUMENT HAS
BEEN DELIVERED TO THE
CHAIRMAN OF THE BOARD

By _Ralph B. Clark_

    Chairman of the Board of
    Supervisors

_____

  ) LINDA D. ROBERTS  _4-8-86_
Clerk of the Board of
Supervisors

Dated: _3-18-86_

CITY OF  ORANGE _____

By _____
Title  _MAYOR_ _____

APPROVED AS TO FORM:
DATE: _2-26-86_
BY: _Gene R. Munshin_
    ASSIST /CITY ATTORNEY/

10-14-85
R14/109 SHW:rer

1.

*w/ stem 17*
*12/17/85*

# MINUTES OF THE BOARD OF SUPERVISORS
## OF ORANGE COUNTY, CALIFORNIA

### DECEMBER 17, 1985

MASTER FIRST AMENDMENT TO AGREEMENT TO PROVIDE LICENSING AND REGULATION OF AMBULANCE AND CONVALESCENT TRANSPORTATION SERVICE (CONTRACT CITIES) (File No. A1.12, X H31.1): On motion by Supervisor Wieder, seconded by Supervisor Stanton, the Clerk of the Board, on behalf of the Board of Supervisors, was authorized to execute Master First Amendment to Agreement to provide Ambulance Licensing and Regulation of Ambulance and Convalescent Transportation Service subsequent to each city's adoption of the "model" Ordinance and Amendment to the Agreement. MOTION UNANIMOUSLY CARRIED.

Exhibit A  Page 56

F1013-2.3 (12/76)

# COUNTY OF ORANGE
## HEALTH CARE AGENCY

636

TOM URAM
DIRECTOR

MAILING ADDRESS:
P.O. BOX 355
SANTA ANA, CA 92702

**EMERGENCY MEDICAL SERVICES**
625 N. ROSS STREET
BUILDING 12
SANTA ANA, CALIFORNIA 92701
(714) 834-6447

April 14, 1986

CERTIFIED
#70247

Gene Minshew
Assistant City Attorney
City of Orange
P.O. Box 449
300 East Chapman
Orange, CA 92666

Dr. Mr. Minshew:

Enclosed are two fully executed copies of the First Amendment to Agreement to Provide Licensing and Regulation of Ambulance and Convalescent Transportation Service for your records.

Should you have any additional questions or your fire department needs assistance with their RFP process, do not hesitate to call me.

Sincerely,

Marilee Miller
Medical Transportation Coordinator

MM:chd

Enclosures

**Exhibit A  Page 57**

**city of orange** 

incorporated 1888

orange civic center • 300 east chapman avenue • orange, california 92666
post office box 449

**city clerk**
**(714) 532-0341**

March 20, 1986

County of Orange
Human Services Agency
P.O. Box 355
Santa Ana, CA  92702

Attention:  Merrilee Miller

Dear Ms. Miller:

Enclosed are the Original and two copies of the First Amendment to
Agreement to provide Ambulance and Convalescent Transport Service.

All Copies have been executed by the City of Orange.  Upon
execution by the County, please furnish us with a fully executed
copy for our records.

If we can be of any further assistance, please contact the
undersigned.

Cordially,

MARILYN J. JENSEN
City Clerk, City of Orange

By:  *Gloria Markus*
Gloria Markus
Records Management Officer

Enclosures

cc:  City Attorney
Business License
Finance Dppartment
Fire Department
Police Department

**Exhibit A  Page 58**

M E M O R A N D U M

February 21, 1986
No. 86-2-686

TO:        HONORABLE MAYOR AND CITY COUNCIL

FROM:      GENE R. MINSHEW, ASSISTANT CITY ATTORNEY

SUBJECT:   FIRST AMENDMENT TO AGREEMENT WITH COUNTY OF
           ORANGE TO PROVIDE LICENSING AND REGULATION
           OF AMBULANCE AND CONVALESCENT TRANSPORT
           SERVICE.


        The City of Orange, with many other cities, has a
contract with the County of Orange to provide licensing and
regulation of ambulance and convalescent transport services.
Chapter 5.35 of the Orange Municipal Code was enacted to
implement this Agreement.

        On advice of the County Counsel, the County recently
sent each contracting city a model ordinance and an amendment
to the 1979 Agreement to delete reference to licensing and
regulation of convalescent transport services.  The County
Counsel's opinion is that, while cities and the County may
have a legitimate concern about emergency ambulance service,
regulating non-emergency services may be an unreasonable
restraint on business and subject the County and the cities
to antitrust legal action.

        At the meeting of February 18, 1986, the Council adopted
Ordinances 6-86 and 7-86 implementing the County's modified
requirements.  Approval of the amendment will delete from
the 1979 Agreement with the County all reference to licensing
and regulation of convalescent transport services.  There is
also another change, a minor one, the term "Health Officer"
is changed to read "Health Care Agency."

DATE OF

ITEM NO. 2.4   PACE   2         2-25-86

Exhibit A  Page 59

MEMORANDUM
No. 86-2-686
February 21, 1986
Page 2


It is requested that the City Council approve and
authorize the Mayor to execute the Amendment to the 1979
Agreement with the County of Orange concerning the licensing
and regulation of ambulance services.

Gene R. Minshew
Assistant City Attorney

GRM:dk
Attachment
cc:  City Manager
     City Clerk
     Business Services Coordinator
     Finance Director
     Fire Chief
     Police Chief

Minutes March 11, 1986

2.   CONSENT CALENDAR (Continued)

2.3   Alcohol Beverage Control Application from "Winship
      International Imports," 1122 East Lincoln Avenue, Orange, for
      "09" Beer & Wine Importer, "17" Beer & Wine Wholesaler, "12"
      Distilled Spirits Importer, "18" Distilled Spirits Wholesaler,
      Original (all).  (P1300.0.2)

      ACTION:  Instructed City Attorney to file protest on behalf of
      Planning and Development Services, Storage not permitted, no OP
      zone 17.28.020B.

2.4   Alcohol Beverage Control Application from "Moreno Restaurant,"
      4328 East Chapman Avenue, Orange, California 92669, for "47" On
      Sale General, Public Eating Place, Self Inc. (P1300.0.2)

      ACTION:  Instructed City Attorney to file protest on behalf of
      Planning and Development Services, no CUP on file for General
      Eating (requires CUP to upgrade to 47 per code 17.80.030B).

2.5   An Amendment to Agreement, dated June 12, 1980, with the County
      of Orange to provide licensing and regulation of ambulances
      deleting any reference to transport services. (A2100.0-Agree 636)

      ACTION:  City Council approved and authorized Mayor and City
      Clerk to execute Amendment to Agreement.

2.6   Request Council authorize Mayor and City Clerk to execute a
      License Agreement between Ven-Lo Transport, a partnership and
      the City of Orange, concerning vacant lot at 351 North Anaheim
      Blvd.  This agreement covers a three year period. (A2100.0-Agree 644)

      ACTION:  Approved.

2.7   Request permission to advertise for bids for modification of
      City-owned street light system on Chapman between Lemon and
      Clark Street. (B4100.0)

      ACTION:  Approved.

2.8   Request Council authorize Mayor and City Clerk to execute
      Agreement to deposit $1.760.00 with the County to cover the
      cost of raising manholes. (A2100.0-Agree 1177)

      ACTION:  Approved.

Exhibit A  Page 61

EXHIBIT B



**THE COUNTY COUNSEL**
**COUNTY OF ORANGE**
333 W. SANTA ANA BLVD., SUITE 407
SANTA ANA, CA 92701
MAILING ADDRESS: P.O. BOX 1379
SANTA ANA, CA 92702-1379
(714) 834-3300
FAX: (714) 834-2359

James C. Harman
Assistant
(714) 834-5257

February 22, 2016

LEON J. PAGE
COUNTY COUNSEL

ANN E. FLETCHER
JACK W. GOLDEN
MARIANNE VAN RIPER
SENIOR ASSISTANTS

JAMES C. HARMAN
ASSISTANT

KAREN L. CHRISTENSEN
JAMES C. HARVEY
ADRIENNE SAURO HECKMAN
MARK R. HOWE
LAURA D. KNAPP
THOMAS A. "MAT" MILLER
NICOLE A. SIMS
DANA J. STITS
SUPERVISING DEPUTIES

JASON C. BROWN
DIRECTOR OF ADMINISTRATION

JANELLE B. PRICE
LAURIE A. SHADE
DANIEL H. SHEPHARD
JOYCE RILEY
STEVEN C. MILLER
CAROLYN S. FROST
ROBERT N. ERVAIS
NIKHIL G. DAFTARY
JEANNIE SU
WENDY J. PHILLIPS
TERI L. MAKSOUDIAN
ANGELICA CASTILLO DAFTARY
MICHAEL A. HAUBERT
RYAN M. F. BARON
BRAD R. POSIN
SAUL REYES
AURELIO TORRE
MARK D. SERVINO
DEBBIE TORREZ
JACQUELINE GUZMAN
ANDREA COLLER
PAUL M. ALBARIAN
D. KEVIN DUNN
LORI A. TORRISI
MASSOUD SHAMEL
SHARON VICTORIA DURBIN
REBECCA S. LEEDS
NICOLE M. WALSH
ELIZABETH A. PEJEAU
LAUREN C. KRAMER
GABRIEL J. BOWNE
JULIA C. WOO
LAUREL M. TIPPETT
MARK A. BATARSE
ADAM C. CLANTON
KRISTEN K. LECONG
ERIC A. DIVINE
JAMES D. P. STEINMANN
VANESSA D. ATKINS
SUZANNE E. SHOAI
DEBORAH B. MORSE
MATTHEW S. SPRISSLER
KAYLA N. WATSON
CAROLYN M. KHOUZAM
ANNIE J. LOO
RONALD T. MAGSAYSAY
JOHN P. CLEVELAND
SAMARA BELGARDE
CHRISTOPHER S. ANDERSON
JUSTIN A. GRAHAM
BRITTANY McLEAN
JEFFREY A. STOCK
MARK N. SANCHEZ
GOLNAZ ZANDIEH
CYNTHIA G. INDA
DEPUTIES

Mr. Stephen M. Wontrobski
27132 Sombras
Mission Viejo, CA 92692

Re:   Costa Mesa and Health and Safety Code section 1797.201

Dear Mr. Wontrobski:

On February 11, 2016, you wrote a letter to Mark Refowitz, Director of the Orange County Health Care Agency, inquiring whether the City of Costa Mesa can legitimately claim rights to administer emergency ambulance contracts under Health and Safety Code section 1797.201 (".201"). Since you have raised a legal issue, we agree with Mr. Refowitz that it would be appropriate for our office to address your inquiry.

In your letter, there is an assumption that Orange County Emergency Medical Services ("OCEMS" the Board of Supervisors-designated local emergency services agency for the County of Orange) has concluded Costa Mesa lacks rights to administer emergency ambulance contracts under .201. In other words, you believe OCEMS denies Costa Mesa's claims of having ".201 rights." You also believe the OCEMS 2014 Emergency Medical Services System Plan (the "Plan") rejects any claim that Costa Mesa has .201 rights.

We are unaware of any instance where OCEMS issued an opinion on Costa Mesa's .201 rights. The Plan does not classify cities or areas as having ".201 rights." Rather, it classifies ambulance operating areas as either OCEMS-administered or city administered. (Plan, Pages 256-257 (copies of which are attached).) The Plan classifies Costa Mesa as a city administered operating area for ambulance services. (Plan, Page 229 (attached).)

Please note that the designation of operating areas as "city administered" rather than those exercising ".201 rights" is not an effort in semantics by OCEMS. The designation reflects two facts. First, cities that are designated as "city administered" do, in fact, administer the emergency ambulance services contracts for ambulances operating within their cities' boundaries. Second, OCEMS does not currently believe the determination of which cities can legitimately claim .201 rights is one to be made by a local emergency medical services agency.

**Exhibit B   Page 62**

Mr. Stephen M. Wontrobski
February 22, 2016
Page 2

The State Emergency Medical Services Agency ("EMSA") notified OCEMS and other local emergency medical services agencies across the state that EMSA will evaluate cities' claims to .201 rights. For instance, EMSA concluded the City of Garden Grove is ineligible to claim .201 rights. EMSA reached this conclusion after performing an evaluation of information provided by OCEMS and the City of Garden Grove. EMSA has not yet provided a similar evaluation of the other Orange County cities that administer ambulance service contracts within their boundaries. Should EMSA commence a review of those cities' claims of .201 rights (including Costa Mesa), OCEMS will provide what documentation or assistance it can to EMSA.

You state in your letter that, "Costa Mesa ceded its 201 rights, when it adopted the Orange County Model Ordinance in the early 1980's by its own City Council passed resolution." According to our research, Costa Mesa passed its ambulance ordinance in 1979, before .201 was enacted in 1980 as part of the Emergency Medical Services System and the Prehospital Emergency Medical Care Personnel Act. In other words, the ordinance was enacted before .201 rights were created and, therefore, it would be difficult to maintain the city ceded rights that didn't exist when it adopted the ordinance. Please also note that the ordinance does not reference having the County or OCEMS administer ambulance services within city limits. Thus, assuming Costa Mesa has .201 rights, it does not appear that there is any agreement or acquiescence by the city to cede such rights to OCEMS. (*County of San Bernardino v City of San Bernardino* (1997) 15 Cal.4th 909, 924). The California Attorney General recently opined that such an agreement between a city and a local emergency services agency must expressly address contract administration. For instance, "a contract between a county or LEMSA and a .201 provider for medical control and oversight of the .201 provider does not extinguish the .201 provider's rights to continue providing prehospital emergency medical services." (97 Ops.Cal.Atty.Gen. 90 (2014).)

It is important to note as well that .201 rights are frequently mistaken for the right to award ambulance contract monopolies under recognized governmental immunity for anti-competitive behavior (a practice termed "exclusivity"). (See, *Community Communications Co. v. Boulder* (1982) 455 U.S. 40.) .201 rights and exclusivity are two different things. ("Section 1797.201 says nothing at all about exclusivity." (*City of Petaluma v. County of Sonoma* (1993) 12 Cal.App.4th 1239, 1244.)) While cities might retain .201 rights, they do not have the ability to create exclusive operating areas that are subject to immunity from federal anti-trust claims. Under Health and Safety Code section 1797.224 (".224"), only local emergency medical services agencies such as OCEMS, acting through an EMSA-approved plan, can create exclusive operating areas. The California Supreme Court explained the interplay between .201 and .224 as, "a local EMS agency's ability to create EOA's may not supplant the cities' or fire districts' ability to continue to control EMS operations over which they have historically exercised control. Nothing in this reference to section 1797.201 suggests that cities or fire districts are to be allowed to expand their services, or to create their own exclusive operating areas." (*County of San Bernardino, supra*, 932.)

Mr. Stephen M. Wontrobski
February 22, 2016
Page 3

Accordingly, the Plan designates city-administered operating areas as either "exclusive" or "non-exclusive." Zones are non-exclusive unless a city can establish it meets one of the two criteria found in .224: 1) the city continues the use of existing providers operating in the manner and scope in which the services have been provided without interruption since January 1, 1981 (the "grandfathering" provision); or, 2) a competitive process was used to select the ambulance service provider. Only the City of Brea has provided information that qualifies for exclusivity under the grandfathering provision. For a city to qualify for exclusivity under the competitive process provision, EMSA requires the city to have used a competitive process within the last ten years. EMSA also mandates the competitive process must result in the award of the ambulance services contract to the highest ranked bidder(s). Under this EMSA-criteria, only Santa Ana and Westminster could be labeled as city administered zones enjoying exclusivity under the Plan.

You have asked about the status of requests for proposals ("RFP's") in city-administered ambulance service zones. OCEMS is aware of no current RFP's in those areas, but recently became aware that the City of Westminster may be issuing an RFP for ambulance services in 2016.

Lastly, I suspect you will have follow-up questions or requests resulting from this letter. If my suspicion is correct, it may be more efficient to meet along with OCEMS officials and discuss any questions or concerns you have. We welcome the opportunity to meet with you at the County Counsel's office at a mutually convenient time.

Very truly yours,

LEON J. PAGE
COUNTY COUNSEL

By _____
James C. Harman, Assistant

JCH:po
Attachments (2)

cc: Howard Backer, M.D., EMSA Director
    Tom Duarte, City Attorney, City of Costa Mesa

**Exhibit B   Page 64**

**PHASE 1**
**OCEMS Administered Areas: Competitive Process contracts expiring 8/31/14**
**February 2014 – December 2014**

| OA | NAME | Unincorporated Areas | Conduct RFP/ Contract Admin | Awarding Agency | Current Provider | Exclusive | RE-DESIGN 2014 |
|----|------|------|------|------|------|------|------|
| 5 | Cypress | | OCEMS | BOS | Care | X | REGION B |
| 10 | Irvine | X | OCEMS | BOS | Doctors | X | REGION C |
| 13 | La Palma | | OCEMS | BOS | Care | X | REGION B |
| 14 | Los Alamitos | X | OCEMS | BOS | Care | X | REGION B |
| 17 | Placentia | X | OCEMS | BOS | Emergency | X | REGION A |
| 19 | San Juan Capistrano | X | OCEMS | BOS | Doctors | X | REGION E |
| 21 | Seal Beach | X | OCEMS | BOS | Care | X | REGION B |
| 22 | Stanton | X | OCEMS | BOS | Care | X | REGION B |
| 23 | Tustin | X | OCEMS | BOS | Doctors | X | REGION C |
| 24 | Villa Park | X | OCEMS | BOS | Americare | X | REGION C |
| 26 | Yorba Linda | X | OCEMS | BOS | Emergency | X | REGION A |
| 28 | Laguna Hills | | OCEMS | BOS | Doctors | X | REGION D |
| 29 | Rancho Santa Margarita | X | OCEMS | BOS | Doctors | X | REGION E |
| 30 | Laguna Niguel | X | OCEMS | BOS | Doctors | X | REGION D |
| 32 | Aliso Viejo | X | OCEMS | BOS | Doctors | X | REGION D |
| 35 | Laguna Woods | | OCEMS | BOS | Doctors | X | REGION D |
| 38 | Mission Viejo | | OCEMS | BOS | Doctors | X | REGION E |
| 39 | Dana Point | | OCEMS | BOS | Doctors | X | REGION D |
| 42 | Lake Forest | X | OCEMS | BOS | Doctors | X | REGION E |

**City Administered Areas: Exclusive (Uninterrupted Existing Provider)**

| OA# - Name | | RFP | AWARD | CONTRACT ADMIN | PROVIDER | EXCLUSIVE | 2014 | 2019 |
|----|----|----|----|----|----|----|----|----|
| 2 | Brea | N/A | City | City | Emergency | X | EOA 2 | TBD |

**City Administered Areas: Exclusive (OCEMS-Approved Competitive Process)**

| OA# - NAME | | RFP | AWARD | CONTRACT ADMIN | PROVIDER | EXCLUSIVE | 2014 | 2019 |
|----|----|----|----|----|----|----|----|----|
| 20 | Santa Ana | City | City | City | Care | X | EOA 20 | TBD |
| 25 | Westminster | City | City | City | Shoreline | X | EOA 25 | TBD |

**PHASE 2**
**City Administered Areas: Non-Exclusive**
**January 2015**

| OA# - NAME | | RFP | AWARD | CONTRACT ADMIN | PROVIDER | EXCLUSIVE | 2014 | 2019 |
|---|---|---|---|---|---|---|---|---|
| 1 | Anaheim | | | City | Care | | OA 1 | TBD |
| 3 | Buena Park | | | City | Care | | OA 3 | TBD |
| 4 | Costa Mesa | | | City | Care | | OA 4 | TBD |
| 6 | Fountain Valley | | | City | Care | | OA 6 | TBD |
| 7 | Fullerton | | | City | Care | | OA 7 | TBD |
| 8 | Garden Grove | | | City | Care | | OA 8 | TBD |
| 9 | Huntington Beach | | | City | City | | OA 9 | TBD |
| 11 | Laguna Beach | | | City | Doctors | | OA 11 | TBD |
| 12 | La Habra | | | City | City | | OA 12 | TBD |
| 15 | Newport Beach | | | City | City | | OA 15 | TBD |
| 16 | Orange | | | City | City | | OA 16 | TBD |
| 18 | San Clemente | | | City | City | | OA 18 | TBD |

**Exhibit B  Page 66**

Stephen Wontrobski
27132 Sombras
Mission Viejo, CA 92692

February 11, 2016

Mr. Mark Refowitz
405 West 5th Street Seventh Floor
Santa Ana, CA 92801

Ref:  Costa Mesa 201 Rights

Dear Mr. Refowitz:

I just want to advise you that in the January 19, 2016 Costa Mesa City Council meeting, the subject of City of Costa Mesa 201 rights came up.  Costa Mesa and its City Attorney maintain that it has 201 rights.  This is in direct contradiction to your County EMS plan that was approved by the State EMSA Director, that states only Brea currently has 201 rights.  Hence, both your agency and the State EMSA Director maintain that Costa Mesa has <u>no</u> 201 rights.

With the submission of the County's EMS plan to the State Director for his approval, the County was required to verify that Costa Mesa still had 201 rights.  It determined that only Brea had 201 rights.  Costa Mesa did not.

I understand that Costa Mesa ceded its 201 rights, when it adopted the Orange County Model Ambulance Ordinance in the early 1980's by its own City Council passed resolution.  I believe your and the State Director's determination that Costa Mesa does not have 201 rights is correct.  Consequently, if this is correct, it would be illegal for Costa Mesa to issue any RFP for ambulance services.

Furthermore, it would appear that under the Butte County appellate case, the Orange County Health Care Agency would be required to issue and administer any ambulance RPP/Contract that Costa Mesa is intending to issue.  Your assistance in addressing this matter will clear up a glaring interpretation conflict regarding Costa Mesa's 201 rights and who is authorized to issue and administer an RFP for ambulance services for Costa Mesa.

<u>Questions</u>

Has Costa Mesa provided your agency or the State EMSA Director with evidence that it has contracted for or provided EMS ambulance services on a continuous basis since June 1, 1980?

Is Costa Mesa or the Health Care Agency correct in the determination of Costa Mesa 201 rights?

<u>Follow-up Request</u>

Long ago I requested that you provide the status of RFP's for ambulance services for non-OCFA Orange County cities.  I received no response from your agency to this letter.  Consequently, I issued a follow-up letter to you requesting the status of the RFP preparation and issuance.  Additional time has now passed without any response to that reminder letter to you.

An answer to my requested information will not only serve the interests of the public, but it will also provide needed information to County Counsel, the State EMSA Director, and the Board of Supervisors.  Can you please respond to my RFP status information request?

Sincerely,

Stephen M. Wontrobski                                         E: ochcaCM201rights02-11-16

Cc:  Tammi McConnell; EMSA Director; Costa Mesa City Council Members

**Exhibit B  Page 67**

Date: <u>2014</u>

**EMS PLAN**
**AMBULANCE ZONE SUMMARY FORM**

In order to evaluate the nature of each area or subarea, the following information should be compiled for each zone individually.  <u>Please include a separate form for each exclusive and/or nonexclusive ambulance zone</u>.

| |
|---|
| **Local EMS Agency or County Name:** Orange County EMS |
| **Area or Subarea (Zone) Name or Title:** OA 4 – Costa Mesa |
| **Name of Current Provider(s):**<br>Include company name(s) and length of operation (uninterrupted) in specified area or subarea.<br><br>Care Ambulance Service (served the area since 2008) |
| **Area or Subarea (Zone) Geographic Description:** City of Costa Mesa |
| **Statement of Exclusivity (Exclusive or Non-Exclusive [HS 1797.6]):**<br>Include intent of local EMS agency and board action.<br><br>Non-Exclusive |
| **Type of Exclusivity ("Emergency Ambulance," "ALS," or "LALS" [HS 1797.85]):**<br>Include type of exclusivity (Emergency Ambulance, ALS, LALS, or combination) and operational definition of exclusivity (e.g., 911 calls only, all emergencies, all calls requiring emergency ambulance service, etc.). |
| **Method to achieve exclusivity, if applicable (HS 1797.224):**<br>If <u>grandfathered</u>, pertinent facts concerning changes in scope and manner of service.  Description of current provider including brief statement of uninterrupted service with no changes to scope and manner of service to zone.  Include chronology of all services entering or leaving zone, name or ownership changes, service level changes, zone area modifications, or other changes to arrangements for service.<br><br>If <u>competitively-determined</u>, method of competition, intervals, and selection process.  Attach copy/draft of last competitive process used to select provider or providers. |

EXHIBIT C



**1059 East Bedmar Street
Carson, California  90746
Office:  (310) 835-9390
Fax:  (310) 835-3926
Internet:  americare.org**



March 19, 2015

*Sent via e-mail to:*  fred.wilson@surfcity-hb.org

Fred Wilson, City Manager
City of Huntington Beach
200 Main Street
Huntington Beach, CA 92648

Re: Request for Rotation in OCEMS Designated Non-OCEMS Administered OA Ambulance Zone OA 9 – Huntington Beach

Dear Mr. Wilson:

AmeriCare MedServices, Inc. ("AmeriCare") a privately family-owned and operated Orange County-based California Corporation which is qualified and licensed to provide emergency ambulance service throughout Orange County and that has been serving Orange County since its corporate organizational formation in 1996.

We are writing to you today at the direction of Dr. Samuel Stratton, Medical Director, Orange County EMS ("OCEMS") a division of the Orange County Health Care Agency.  As you may know, the Orange County Board of Supervisors has designated OCEMS to serve as its designated Local Emergency Medical Services Agency ("LEMSA") pursuant to California Health and Safety Code section 1797.200.   In its 2014 EMS Plan, which has been submitted to and approved by the California EMS Authority pursuant to California Health and Safety Code sections 1797.250 and 1797.105, OCEMS has determined that its designated Ambulance Response Zone OA 9 – Huntington Beach is a non-exclusive operating zone pursuant to California Health and Safety Code section 1797.224.

Pursuant to California Health and Safety Code section 1797.94, on February 25, 2015 we submitted a written request to OCEMS wherein we sought to be placed on rotation within OCEMS designated non-exclusive Ambulance Response Zone OA 9 – Huntington Beach.  On March 18, 2015 we received a written reply wherein Dr. Stratton directed us to contact the City Manager for the incorporated city within the zone.  Therefore, we are requesting that the City arrange for AmeriCare to be placed into rotation for all 9-1-1 prehospital emergency medical services requests for emergency ambulance service within Zone OA 9 – Huntington Beach in a manner that results in AmeriCare receiving an equal proportionate share of all such 9-1-1 prehospital emergency service requests within the zone.

We are making this request as we have reason to believe that as a non-exclusive Ambulance Response Zone, whichever entity (the County or the City) has the responsibility and authority related to the oversight, regulation and administration of prehospital emergency medical services and/or emergency ambulance operations within Ambulance Response Zone OA 9 – Huntington Beach, also bears the liability of anti-trust claims as restrictions of trade within this Zone would not be provided with state action immunity under federal antitrust laws for such actions taken which run afoul of such federal antitrust laws.

If on the other hand, the City maintains the position that it is does not has the responsibility and authority related to the oversight, regulation and administration of prehospital emergency medical services and/or emergency ambulance operations within Ambulance Response Zone OA 9 – Huntington Beach, upon such timely written confirmation of such a position in response to this written communication, AmeriCare will redirect its communications to the County in an effort to seek relief for our desire to enjoy the fruits of a free and competitive market for the industry in which we are engaged in.

We note that the City entered into an Ambulance Contract City Agreement with the County on 10/06/1986.  Based on this, we believe the matter of administration, and regulation of private ambulance services providing emergency ambulance

**Fred Wilson, City Manager, City of Huntington Beach**
**Subject:  OCEMS Designated Non-OCEMS Administered Ambulance Response Zone OA 9 – Huntington Beach March 19, 2015**
**Page 2 of 2**

service within the City has long been delegated by the City to the County pursuant to the above referenced agreement. Please let us know the City believes otherwise.

We thank you in advance for your careful consideration of the facts and requests made herein.

Sincerely,

Mike Summers
President/CEO
AmeriCare Ambulance Service

Cc:      Samuel Stratton, MD, Medical Director, OCEMS, via e-mail at: sstratton@ochca.com
         Tammi McConnell, EMS Administrator, OCEMS, via e-mail at: TMcConnell@ochca.com
         Mark Refowitz, Director, OCHCA, via e-mail at: mrefowitz@ochca.com
         Howard Backer, MD, via e-mail at:  Howard.Backer@EMSAuthority.ca.gov

EXHIBIT D



# CITY OF ORANGE

CITY MANAGER

PHONE: (714) 744-2222 • FAX (714) 744-5147

April 7, 2015

Mr. Michael Summers
President/CEO
AmeriCare Ambulance Service
1059 East Bedmar Street
Carson, CA 90746-3601

Re:   City of Orange Ambulance Services

Dear Mr. Summers:

The City of Orange is in receipt of your letter dated March 19, 2015, requesting that AmeriCare MedServices, Inc. (AmeriCare) be placed on rotation for an equal proportionate share of all 9-1-1 prehospital emergency medical services requests for emergency ambulance service within the City.

The City respectfully denies your request. As more fully discussed below, the City has retained the authority to contract for emergency ambulance transportation services within its territorial limits, pursuant to Health and Safety Code section 1797.201 (Section 201); and, in accordance with its exercise of this authority, the City currently has the exclusive right to provide emergency ambulance services within the City's jurisdiction.

At the onset, it is important to understand the regulatory background for the provision of emergency medical services in the State of California. In 1980, the California Legislature enacted the Emergency Medical Services System and Prehospital Emergency Medical Care Personnel Act (EMS Act), which was codified as Health and Safety Code section 1797 *et seq*. This legislation was adopted for the purpose of governing most aspects of the statewide emergency medical services system at the state, county and local levels. Under this statewide system, counties are permitted to develop an emergency medical services program, and each county developing such a program is required to designate a local emergency medical services agency (LEMSA) to administer the program. In 1982, the Orange County Board of Supervisors designated the County's Health Care Agency as the LEMSA.

In 2014, Orange County adopted an Emergency Medical Services System Plan. Contrary to the County's prior plan, which designated certain functions to the Orange County Fire Authority, including the contract RFP process, the 2014 plan provides for the exclusive authority of the

**Exhibit D   Page 71**

Mr. Michael Summers
April 7, 2015
Page 2

County to control the process for bidding and awarding contracts for ambulance services to all non-exempt cities within the County, including the creation of exclusive emergency operating areas.

The change in the County's plan, as mandated by the California Emergency Medical Services Authority, was based on the California Court of Appeal decision in *County of Butte v. California Emergency Medical Services Authority* (2010) 187 Cal.App.4th 1175. In that case, the court clarified the statutory responsibilities of LEMSAs with regard to the administration of requests for proposals and contracts for exclusive operating areas. The court emphasized that the EMS Act requires each county "to designate one local emergency medical services agency, not two such agencies sharing the statutory powers and duties of Chapter 4 of the EMS Act …, including the establishment of [exclusive operating areas] and the designation of exclusive operators within those areas." (187 Cal.App.4th at 1193.)

A key feature of the EMS Act is to authorize the establishment of exclusive operating areas and the selection of service providers to be the exclusive operators within those areas. "Such authorization was necessary to immunize the agencies from liability under the United States Supreme Court's then recent decision holding that local governments granting monopolies would not be exempt from antitrust laws unless they acted pursuant to 'clearly articulated and affirmatively expressed' state policy." (*County of San Bernardino v. City of San Bernardino* (1997) 15 Cal.4th 909, 917-918.) In turn, the creation of exclusive operating areas was seen as necessary "to offer private emergency service providers protection from competition in profitable, populous areas in exchange for the obligation to serve unprofitable, more sparsely populated areas." (*Valley Medical Transp. v. Apple Valley Fire Protection Dist.* (1998) 17 Cal.4th 747, 759.)

Thus, in order for local agencies to maintain state-sanctioned immunity from antitrust laws while awarding exclusive contracts for the provision of emergency medical services, the California Emergency Medical Services Authority had determined that delegation by the County of Orange of the RFP process to the Orange County Fire Authority was not in compliance with the EMS Act, and that the County is responsible for conducting and administering the RFP process and for awarding contracts. Although the California Emergency Medical Services Authority indicated that the County may contract with third parties to develop and administer RFPs, such third parties must be neutral and have no vested interest in the process, and the County must provide direct oversight, monitoring and, ultimately, the selection of a provider as part of the competitive process.

Your request to be placed on rotation for all 9-1-1 prehospital emergency medical services requests for emergency ambulance service within the City does not take into account that the City, like several other cities in Orange County, has been administering its own emergency medical services contract process. When enacted in 1980, the EMS Act recognized that many local agencies already

Mr. Michael Summers
April 7, 2015
Page 3

had historical arrangements for the provision of their own emergency medical services, and the EMS Act intended to protect the right of such cities and fire protection districts to continue the administration of their prehospital EMS. In brief, the EMS Act declares that such arrangements shall remain in place absent a decision of the local agency to enter into a contract with the relevant LEMSA to transfer the responsibility for administration of their services.

Under Health and Safety Code section 1797.224 (Section 224), exclusive market rights may only be awarded for areas within a LEMSA's jurisdiction to a provider that has been selected through a competitive process or to a provider that has operated in the "same manner and scope" since January 1, 1981. If neither of these conditions is met, any qualified provider must be permitted to operate emergency ambulance services within the LEMSA's jurisdiction. However, these rules do not apply to certain cities and fire protection districts, including the City, that have retained the administration of their own EMS systems since June 1, 1980.

Section 201 states in pertinent part:

> "Upon the request of a city ... that contracted for or provided, as of June 1, 1980, prehospital emergency medical services, a county shall enter into a written agreement with the city ... regarding the provision of prehospital emergency medical services for that city .... *Until such time that an agreement is reached, prehospital emergency medical services shall be continued at not less than the existing level, and the administration of prehospital EMS by cities ... presently providing such services shall be retained by those cities* ...." (Emph. added.)

The plain wording of Section 201 allows qualifying cities to continue to contract for or provide their own ambulance and other emergency medical services if they have not entered into an agreement with the LEMSA ceding control to the LEMSA for such matters. The California Supreme Court recognized that the decision of a city to enter into such an agreement is voluntary, and there is no statutory duty imposed on a city for requesting or reaching an agreement. (*County of San Bernardino, supra,* 15 Cal.4th at 922.)

Notably, the last sentence of Section 224 reads: "Nothing in this section supersedes Section 1797.201." Thus, while Section 224 speaks to the ability of a LEMSA to create exclusive operating areas, "the ability to create [exclusive operating areas] in Section 1797.224 is made expressly subject to [Section 201], and therefore *would not permit a county or EMS agency to unilaterally displace a city ... continuing to operate emergency medical services.*" (*Valley Medical Transp., supra,* 17 Cal.4th at 759 (emph. added); *County of San Bernardino, supra,* 15 Cal.4th at 932 ["a local EMS agency's ability to create [exclusive operating areas] may not

**Exhibit D  Page 73**

Mr. Michael Summers
April 7, 2015
Page 4

supplant the cities' ... ability to control EMS operations over which they historically exercised control"]; see also *City of Petaluma v. County of Sonoma* (1999) 15 Cal.App.4th 1239.)

Because the City's authority to provide EMS services is derived directly from statute (*i.e.*, Section 201) and not by the LEMSA, the County has no authority to alter or modify how emergency ambulance services are provided within the City's jurisdiction. A county cannot "contravene the authority of eligible [*i.e.*, grandfathered] cities ... to continue the administration of their prehospital EMS without the latter's consent." (*County of San Bernardino*, *supra*, 15 Cal.4th at 924.) Instead, the county must accommodate the city's authority as the county creates an integrated EMS system.

In sum, cities that retain their right to administer their own EMS systems under Section 201 are not subject to the requirements of Section 224. In contrast to providers that are granted exclusive market rights by a LEMSA under Section 224, there is no requirement that a provider granted exclusive market rights by a Section 201 city be selected through a competitive process or meet any "manner and scope" requirements. Rather, Section 201 cities are free to contract with any qualified company they choose.

The City of Orange's right to administer its prehospital emergency medical services was challenged in 1996 by Medix Ambulance Service in the case of *Medix Ambulance Service, Inc. v. City of Orange*, Orange County Superior Court Case No. 75 44 97. In that case, Medix sued the City of Orange claiming that it violated both City ordinances and Health & Safety Code § 1797 et seq. when the City decided to take its services in-house and terminate its contract with Medix. The trial court upheld the City's right to do so and this was also upheld by the Fourth District Appellate Court in an unpublished opinion. I am enclosing a copy of that decision for your review.

In the appellate decision, the court beginning on page 7 discusses Medix' action alleging Orange violated the EMS Act. The appellate court on pages 7 and 8, made it clear that the consideration, pursuant to 1797.201 is whether or not a city exercises control by either contracting for the service or providing the service themselves. The court found that Orange has at all times either contracted for the service or provided the service themselves. At no time has Orange sought to, or entered into, any written contract with the County to provide such service.

Therefore, those cities in Orange County having grandfathered ambulance services contracts from and after 1980, such as the City, have the unfettered ability to continue those arrangements and are not subject to or bound by the County's RFP process. This conclusion finds support in a recent opinion of the California Attorney General. In Opinion No. 11-707 (December 16, 2014), the Attorney General declares: "Cities ... that have been providing prehospital emergency medical services since June 1, 1980 ... are not required by state regulation to have a written agreement

Mr. Michael Summers
April 7, 2015
Page 5

with a [LEMSA] in order to 'participate in the EMS system' as specified in [Section 201]." The Attorney General observed that until and unless a Section 201 city requests such a written agreement, the city "retains the right to administer prehospital EMS within its borders." (Quoting *County of San Bernardino*, *supra*, 15 Cal.4th at 925.)

A Section 201 city that provides services either directly or through a private contractor is not required to open up its jurisdiction, on a rotation or any other basis, to additional providers. In addition to the authority conferred by Section 201, a city's authority to exclusively contract for emergency ambulance services is established by Government Code section 38794, which states as follows: "The legislative body of a city may contract for ambulance service to serve the residents of the city as convenience requires."

The City disagrees with your assertion that the City is exposing itself to antitrust liability by not acquiescing to your demand and instead maintaining its current contract for exclusive emergency ambulance services. As the U.S. Court of Appeals for the Ninth Circuit has stated, Government Code section 38794 "affirmatively authorizes cities to provide ambulance services to their residents and further authorizes the elimination of competition" within the city's jurisdiction in so doing. (*Spring Ambulance Service v. City of Rancho Mirage* (9th Cir. 1984) 745 F.2d 1270, 1273; see also *Gold Cross Ambulance v. City of Kansas City* (8th Cir. 1983) 705 F.2d 1005.) Therefore, the City and other Section 201 cities enjoy state action immunity from antitrust challenge when it awards an exclusive emergency ambulance service contract. (See Health & Saf. Code § 1797.6.) Additionally, you should be aware that California's antitrust laws do not apply to municipalities. (E.g., *Penn v. City of San Diego* (1987) 188 Cal.App.3d 636; *People v. City and County of San Francisco* (1979) 92 Cal.App.3d 913; *Widdows v. Kock* (1968) 253 Cal.App.2d 228.)

Notwithstanding its ability to continue the administration of grandfathered emergency ambulance services, the City acknowledges that it is subject to the provisions of the EMS Act relating to so-called "medical control," which is exercised by LEMSAs (here, the County of Orange) under the direction of a medical director with regard to such matters as dispatch and patient destination policies, patient care guidelines, and quality assurance requirements. (*Valley Medical Transp.*, *supra*, 17 Cal.4th at 755; *County of San Bernardino*, *supra*, 15 Cal.4th at 926-927; Health & Saf. Code § 1797.220.)

It appears you believe that certain agreements between the County of Orange and Section 201 cities implementing the County's medical control over emergency medical services somehow authorize the County to administer the RFP process and award contracts for those cities' emergency ambulance services. Such a belief would be erroneous. Agreements between the County and Section 201 cities concerning the provision of medical control do not operate to waive or extinguish those cities retention of their rights to continue to administer contracts for emergency

Mr. Michael Summers
April 7, 2015
Page 6

ambulance services.  The County's medical control policies and procedures cannot interfere with the City's internal administrative matters.  In short, statutory language, case law and the California Attorney General clearly reject your apparent position.

Please feel free to contact our City Attorney, Wayne Winthers if you have any questions concerning the matters discussed above.

Sincerely

Rick Otto
Interim City Manager

cc:     Samuel J. Stratton, MD, MPH, Orange County Health Care Agency
        Tammi McConnell RN, MSN, EMS Administrator, Orange County Health Care Agency
        City Council

**Exhibit D  Page 76**